## SNOWDEN *v.* THOMPSON.

## Opinion delivered February 10, 1913.

1. STATUTES—RULE OF CONSTRUCTION.—When words are obviously used by the framers of a statute to convey a certain meaning, it is the duty of the court to disregard the literal meaning and adopt that which was manifestly intended by the law makers. (Page 522.)

2. DRAINAGE DISTRICTS—CONSTRUCTION OF STATUTE.—Where a statute creating a drainage district in Green and Lawrence counties provides for the election of *a treasurer,* and for the collection of the

taxes for the district and payment of the same to the *county treasurers*, and makes no provision for payment by the two county treasurers to the district treasurer, the statute manifestly intends that a single officer shall hold the office of treasurer of the district, and the statute implies a duty on the part of the county treasurers to pay the funds over to the district treasurer, for safe keeping and disbursement, performance of which duty may be compelled by mandamus. (Page 523.)

3. STATUTES—RULES OF CONSTRUCTION.—In construing a statute courts can not arbitrarily supply words merely to give the effect which they think the law makers might have intended, but courts may supply obvious omissions in order to carry out the legislative intent. (Page 522.)

4. PLEADING—FORMAL DEFECT—AMENDMENT.—When a suit by a drainage district is brought in the name of the directors, who alone are authorized to bring suit for the district, the failure to name the district as plaintiff is a defect of form only, and it is the duty of the trial court to permit the complaint to be amended to conform to the statute. (Page 524.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; reversed.

*R. P. Taylor* and *M. P. Huddleston,* for appellants.

Notwithstanding section 9 of the act directs the payment of the funds in question to be made by the collectors to the treasurers of their respective counties, it is necessarily implied from other provisions of the act that these funds are not to be retained by the county treasurers, but should be paid to the treasurer of the district. Act 318, Acts 1911, §§ 3, 10, 23.

*R. E. L. Johnson,* for appellee.

1. Plaintiffs have not the legal capacity to sue, hence, the suit not being brought by the proper party plaintiff, the demurrer was well taken. Act, § 2.

2. The petition does not state facts sufficient to constitute a cause of action. It is not alleged that a warrant, signed by the chairman of the board was presented for payment, nor that there is in the treasury funds sufficient to pay all outstanding warrants of a lower number. Act, § 10.

The word "treasurer" as used in §§ 9 and 10 of the act directly refer to, and mean, "county treasurer."

Compare same with sections 10 and 11 of general Act No. 279, Act 1909, pp. 839-840.

3. The county treasurer being legally in custody of the taxes and revenues of the district at the time suit was brought, mandamus did not lie to compel him to deliver same to the treasurer of the board of directors. *Coleman* v. *Drainage District,* 106 Ark. 22.

McCulloch, C. J. This appeal involves the construction of a special statute enacted by the General Assembly of 1911 creating a drainage district in the counties of Greene and Lawrence styled the "Greene and Lawrence County Drainage District No. 1." The point of controversy is whether the respective county treasurers of those counties shall handle and disburse the funds of the drainage district or whether the funds shall, under the terms of the act, be paid over to the treasurer of the district for safekeeping and disbursement. This is an action instituted in the circuit court by the directors of the district to compel the county treasurer of Greene county to pay to the treasurer of the district the funds collected upon assessments against real property. The statute in question contains thirty-two sections, which relate to the creation of the district, a description of its boundaries, the organization of the directors and election of officers, and provision for levying and collecting assessments, the enforcement of payment of delinquent assessments, issuance of bonds, and making the improvements prescribed by the terms of the statute.

The statute seems to be largely a copy of the general statute on the subject of organization of drainage districts and procedure thereunder enacted during the session of 1909, and the inaccuracies which bring about this controversy concerning the interpretation of the statute were probably caused by failing to properly discriminate between the terms of the general statute which could be made applicable to a special statute such as this.

The sections of the special statute necessary to a decision of the question now presented are as follows:

"Section 3. The first meeting of said board of directors shall be held at the courthouse in Paragould, Arkansas, on the first Monday in June, 1911, and the said board shall, at said meeting, or at such other time as may be fixed by them, organize by electing a president, a secretary and a treasurer, all of whom, except the treasurer, may be chosen from members of the board of directors, and said board may appoint from time to time all other officers, agents and advisers which they may deem necessary to the proper conduct of the business of said corporation    *    *    *

"Section 9. The amount of the taxes herein provided for shall be annually extended upon the tax books of Greene and Lawrence counties, and collected by the collectors of Greene and Lawrence counties along with the other taxes,    *    *    *    and the same shall by the collectors be paid over to the treasurers of Greene and Lawrence counties at the same time that they pay over the county fund    *    *    *

"Section 10. The treasurer shall pay out no money save upon the order of the board and upon a warrant signed by the chairman thereof. He shall be allowed a commission not exceeding one per centum upon all sums lawfully paid out to be fixed by the board and he shall give special bond in a sum to be fixed by it. Every warrant shall state upon its face, to whom, the amount and the purpose for which it is issued. All warrants shall be dated and shall be numbered consecutively in a record to be kept by the board of the number and amount of each, and no warrant shall be paid unless there is in the treasury funds enough to pay all outstanding warrants bearing a lower number. No warrant shall be increased, by reason of any depreciation in the market value thereof, nor shall any contract or warrant be made payable or paid in anything but currency. If the directors deem best, they may require the treasurer to deposit the funds of the district in a solvent bank, which will pay interest thereon at not less than three nor exceeding four per cent, and shall give a bond, conditioned that said funds

shall be safely kept and paid out in accordance with law. Said order shall relieve the treasurer and his bondsmen from liability for loss of such funds through the insolvency of said bank and its bondsmen; but no such order shall be effective unless in writing, and entered on the minutes of the board before said funds are deposited with such bank."

The statute it will be observed, does not specifically provide how the funds shall be gotten out of the hands of the several county treasurers, unless section 10 be construed to mean that the word "treasurer," as used in that section, is applicable to the county treasurers and constitutes them the custodians of the funds until disbursed by warrants drawn on them by the directors. The language of the last named section is not, either in letter or spirit, applicable to the two county treasurers. Taking the strict letter of the statute, it refers to one officer, "the treasurer," and was not meant to apply to distinct officers. It provides that the warrants shall be numbered consecutively and that no warrant shall be paid unless there is in the treasury funds enough to pay all outstanding warrants bearing a lower number. This provision is inapplicable to the case of two treasurers, for in that case neither would be advised as to the amount of funds in the hands of the other or as to what warrants had been paid by the other treasurer. In the very nature of the provision, it is manifestly intended to apply to a single officer, who is advised of the amount of funds in the treasury and the consecutive numbers of the warrants presented for payment.

On the other hand, it is urged that section 10 was intended to apply to the two county treasurers for the reason that there is no other provision in the statute requiring the giving of a bond by the treasurer and that the term "special bond" is used, which necessarily is applicable to an officer who has already given a bond. The use of the word "special" is probably one of the inaccuracies which grew out of copying another statute, but there is no significance to be given to the use of that

word so as to find any aid in interpreting the meaning of the statute.

There are undoubtedly inaccuracies and omissions which call for a construction of the statute, and it becomes our duty to determine whether the legislative intent can be gathered from the language used. We can not arbitrarily supply words merely to give the effect which we think the lawmakers might have intended; but it is fairly within the limits of the rules for construction that courts can supply obvious omissions in order to carry out the legislative intent.

This Court, in the case of *Reynolds* v. *Holland,* 35 Ark. 56, laid down a rule of construction which is quite useful in reaching a conclusion in the present case. There (quoting the syllabus) the Court said:

"In construing a statute, the question for the courts is, what did the Legislature really intend to direct; and this intention must be sought in the whole of the act taken together, and other acts in *pari materia.* If the language be plain, unambiguous and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the courts can not give it a different meaning to subserve a public policy or to maintain its constitutional validity. The literal meaning of the words will be disregarded, when it is obvious from the act itself that the use of the word was a clerical error, or that the Legislature intended it in a different sense from its common meaning."

Other illustrations of the rule may be found in the cases of *Garland Power & Development Co.* v. *State Board of Railroad Incorporation,* 94 Ark. 422, and *State v. Handlin,* 100 Ark. 175. In the first of the above-cited cases we said:

"In order to conform to the legislative intent, errors in an act may be corrected or words rejected and others substituted."

Of course, it was not meant that the arbitrary rejection or substitution of words is justifiable; but where words were obviously used by the framers of a statute

to convey a certain meaning, it is the duty of the court to disregard the literal meaning and adopt that which was manifestly intended by the lawmakers.

Applying this rule of construction, it seems clear to us that the framers of the statute intended to make the treasurer of the district the custodian of all its funds and that he should be required to pay them out upon warrants issued by the directors. Unless we so construe the statute the office of treasurer is a mere name and carries with it no duties whatever. We should not attribute to the lawmakers the senseless thing of creating a treasurer of the district and at the same time providing that some other officers should keep and disburse the funds.

The only difficulty we find in adopting this construction is that there is no provision for getting the funds out of the hands of the county treasurers and into the hands of the treasurer of the district. We think, however, that a duty on the part of the county treasurers to pay the funds over to the treasurer of the district is clearly implied. In the first place, the collectors are required to pay the funds over to the respective county treasurers, but this is done only for convenience of the collectors while they are making their settlements for all other funds collected. The county treasureres are not made custodians of the funds for any length of time and, as already pointed out, there is no provision for them to pay out the funds in the regular order of disbursement in conducting the business of the district. In the next place, the statute makes no provision for fees for the county treasurers, and it is clear that they are not entitled to any fees for receiving the funds. *Honey v. Greene County,* 102 Ark. 106. This is so because they perform no duties except the perfunctory one of receiving the money from the several collectors of their counties. In other words, they are to receive no fees because they are not constituted the custodians of the funds and are not required to perform any duties in the disbursement thereof. We are of the opinion, therefore, that the duty on the part of the county treas-

urers to pay the funds over to the district treasurer is clearly implied from the language of the statute. Performance of that duty can be compelled by mandamus.

It is insisted that the court properly sustained the demurrer because there is no allegation that the county treasurer of Green county refused to pay a warrant. If we are correct in our construction of the statute it was not necessary that there be a warrant if the duty devolved upon the county treasurer to pay over the funds in his hands to the district treasurer. The provision in the statute for drawing warrants, as we have already seen, applies to warrants drawn on the district treasurer for disbursement of the funds, and not to the payment over by the county treasurers to the district treasurer. It might as well be said that the collectors were not bound to pay the money over to the county treasurers until warrants had been drawn on them by some statutory authority. This is not so. The law commands the collectors to pay the money over to the county treasurers and, according to our conception of the true meaning of the statute, there is an implied command to the county treasurers to pay the funds so received by them over to the district treasurer.

It is also contended that the suit was not properly brought, in that the directors, themselves, are named as plaintiffs, whereas it should have been brought in the name of the district. The directors sued jointly in their official capacity. No one else is authorized to bring a suit for the district except the directors, and the fact that the district itself was not named as plaintiff is a defect merely of form and not of substance. It was the duty of the court, if attention had been called to it, to have allowed or required the plaintiffs to amend the complaint so as to properly conform to the language of the statute creating the district.

We are of the opinion that the court erred in sustaining the demurrer to the complaint, and the judgment is, therefore, reversed and the cause remanded with directions to overrule the demurrer.

SMITH, J., not participating.