JOHN RHODES AND PATRICIA DRENNAN
*v.* CITY OF LITTLE ROCK

5281                                                           418 S. W. 2d 783

Opinion delivered September 25, 1967

*John W. Walker,* for appellant.

Joe Kemp, Little Rock City Attorney; *Perry V. Whitmore,* Asst. City Atty., for appellee.

CONLEY BYRD, Justice. Appellants John Rhodes and Patricia Drennan were convicted under § 25-121 of the Little Rock Code of Ordinances. They were arrested by two officers at the residence of appellant Rhodes. The

officers, by the process of shining a flashlight through a venetian blind covering a window, had observed them in bed in a state of undress. There is no contention that the garage apartment where appellants were arrested constitutes a "public place."

The ordinance under which appellants were convicted provides as follows:

"It is hereby declared to be a misdemeanor for any person to participate in any public place in an obscene or lascivious conduct, or to engage in any conduct calculated or inclined to promote or encourage immorality, or to invite or entice any person or persons upon any street, alley, road or public place, park or square in Little Rock, to accompany, go with or follow him or her to any place for immoral purposes, and it shall be unlawful for any person to invite, entice, or address any person from any door, window, porch or portico of any house or building, to enter any house or go with, accompany or follow him or her to any place whatever for immoral purposes.

"The term 'public place' is defined to mean any place in which the public as a class is invited, allowed or permitted to enter, and includes the public streets, alleys, sidewalks and thoroughfares, as well as theaters, restaurants, hotels, as well as other places. The term 'public place' is to be interpreted liberally.

"Any person found guilty of violating the provisions of this section shall, upon conviction, be fined in any sum not less than ten dollars, nor more than two hundred and fifty dollars, or imprisoned for not less than five days nor more than thirty days, or both fined and imprisoned."

For reversal, appellants, in addition to a number of constitutional grounds, contend that the evidence was in-

sufficient to sustain conviction under the ordinance in the absence of a showing that they participated in their activities in a "public place."

The City of Little Rock, on the other hand, takes the position that the ordinance stamps as illegal four separate and distinct courses of conduct, and that the common denominator throughout the ordinance is conduct which has as its purpose unacceptable sexual behavior.

Only when the first paragraph of the ordinance is read in its entirety can it be observed that the conduct therein described is limited to unacceptable sexual behavior. Otherwise, if we accept each phrase as a separate standard, we are left to the dictionary definitions of the words "immoral" and "immorality." Some of the definitions given for these words in Webster's Third Edition cover a multitude of sins not necessarily connected with sexual behavior. Therefore, in accordance with our rule of strict construction of penal statutes, we hold that the ordinance condemns the conduct therein described only when it occurs in a public place.

Reversed and dismissed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot subscribe to the construction given the ordinance by the majority. To me it is clear beyond doubt that the ordinance condemns four distinct courses of conduct, two of which are misdemeanors only when committed in a public place and the others an offense wherever committed. Persons are prohibited:

1. "to participate in *any public place* in any obscene or lascivious conduct"

2. "to engage in any conduct calculated or inclined to promote or encourage immorality"

3. "to invite or entice any person or persons upon *any street, alley, road, or public place, park or square* in Little Rock, to accompany, go with or follow him or her to any place for immoral purposes"

4. "to invite, entice or address any person from any door, window, porch or portico of any house or building, to enter any house or go with, accompany or follow him or her to any place for immoral purposes." [Emphasis ours]

Appellants were clearly convicted for violation of the second prohibition.

The majority justify their action by saying that any other construction than that given by them, would require resort to a dictionary for definition. I cannot see how their construction changes the situation, nor do I see how resort to a dictionary is either objectionable or unusual in determining the meaning of criminal statutes. Resort to the dictionary for this definition is no less required under their construction. I find no difficulty in finding the appropriate definition for this word in this ordinance.

To me, the conclusion that the city council deliberately omitted to require that the acts condemned in the second and fourth alternates must have been in a public place in order to constitute an offense seems inescapable. In order to reach this result, the majority must add the words "in a public place" to this clause. This cannot be arbitrarily done by the court merely to give the effect we might think the lawmakers might have intended. *Snowden* v. *Thompson,* 106 Ark. 517, 153 S. W. 823. Words may not be inserted if the ordinance is intelligible without them. 2 Horack's Sutherland Statutory Construction, 3d Ed. 457, § 4924; 82 C.J.S. 689, Statutes, § 344; 50 Am. Jur. 221, Statutes, § 234. Since words regarding public places are stated clearly in the

first and third clauses, but not the second and fourth, the view that their omission was intentional is substantiated. Where the legislative intent is clear from the words used, there is no room for construction, and no excuse for adding to or changing the meaning of the language employed. *Berry* v. *Sale,* 184 Ark. 655, 43 S. W. 2d 225; *Call* v. *Wharton,* 204 Ark. 544, 162 S. W. 2d 916. The rule which should be applied here is aptly stated in *McCaa Chevrolet Co.* v. *Bounds,* 207 Ark. 1043, 183 S. W. 2d 932, where it was said:

> "* * * Courts may only interpret and enforce laws as they are enacted by the legislative branch. And, in construing a law, a court is not at liberty to read something into the law that was not put therein by its framers, even if such a course may seem necessary in order to prevent an apparently unjust result in the case being considered."

If it could be said that there was any ambiguity whatever about the intention of the lawmakers in this regard, then the qualifying words are to be applied only to the words or phrase immediately preceding and are not to be extended to following words or those more remote. 2 Horack's Sutherland Statutory Construction 448, § 4921; 82 C.J.S. 671, Statutes, § 334; 50 Am. Jur. 258, Statutes, § 268.

Nor do I see any difficulty in arriving at the meaning of the word "immorality" in the ordinance. "Immorality" is, specifically, "unchastity". Webster's New International Dictionary, 2d Ed. "Unchastity" means "quality or state of being unchaste, lewdness, incontinence". Webster's 2d. Among the synonyms for "immorality" are "sexual impurity", "unchastity", "lewdness", "lasciviousness", "sexual promiscuity", "act of lust, rape, fornication, adultery, indecency". Rodale's, The Synonym Finder. In the context of this ordinance there is no doubt but what the word relates only to improper sexual relations. Certainly a man and a

woman, each married to another, occupying the same bed in a state of at least partial undress were engaging in conduct calculated or inclined to promote or encourage unchastity.

In order to arrive at the meaning of a word, if it is susceptible of more than one definition, we must consider the connection and context in which it is used and the evident purpose of the lawmakers. *Rose v. W. B. Worthen Co.*, 186 Ark. 205, 53 S. W. 2d 15, 85 ALR 212; *McClure v. McClure*, 205 Ark. 1032, 172 S. W. 2d 243. A reading of this ordinance will eliminate any possible doubt that this definition was intended.

The meaning of this ordinance is certainly no more vague or indefinite than §§ 41-3202 and 41-3203, Ark. Stat. Ann. (Repl. 1964) sustained against a charge of indefiniteness in *Dillard v. State*, 226 Ark. 720, 293 S. W. 2d 697. This statute prohibited, among other things, one from entering or remaining in any house, place, building, tourist camp, or other structure for the purpose of prostitution, lewdness, or assignation. "Lewdness" was defined in the act to include any indecent or obscene act. The court quoted one dictionary definition of "indecent" as "morally offensive". There the acts held to constitute the offense consisted of appellant's registering at a tourist court under a fictitious name and address, registering the woman accompanying him as his wife when she was not, and staying in the cabin alone for the remainder of the night.

The correctness of this construction of this ordinance, as to the meaning of the word "immorality", is further indicated by an examination of the city's authority to legislate. No other definition would properly fit into the municipal lawmaking authority. If there is any question about the construction of this ordinance, then it is our duty to give it a constitutionally valid construction as opposed to a possible construction constitutionally invalid. On this subject this court, in *State*

v. *Moore,* 76 Ark. 197, 88 S. W. 881, 70 L.R.A. 671, quoted from Cooley's Constitutional Limitations as follows:

"* * * 'The duty of the court to uphold a statute when the conflict between it and the Constitution is not clear, and the implication which must always exist that no violation has been intended by the Legislature, may require it in some cases, where the meaning of the Constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. For as a conflict between the statute and the Constitution is not to be implied, it would seem to follow where the meaning of the Constitution is clear, that the court, if possible, must give the statute such a construction as will enable it to have effect.' The same presumption is indulged in favor of the legislative enactment with reference to the form of the statute and the constitutional prerequisites and conditions as to the subject-matter of the legislation."

The only power of the city to legislate in this field is to adopt such ordinances as shall be necessary for the suppressing of indecent and disorderly conduct. Ark. Stat. Ann. § 19-2401 (Repl. 1956). This same section of the statute includes the general power of the city legislative body to adopt such ordinances as to them seem necessary to improve the morals, order, comfort and convenience of the city and its inhabitants. If the ordinance were to be given a wider scope than this, it would be invalid. Legislative language will be interpreted on the assumption that the legislative body was aware of existing statutes, the rules of statutory construction and judicial decisions. 2 Horack's Sutherland Statutory Construction 327, § 4510. We should construe the ordinance to be valid if we can and this requires the construction I propose.

Appellants also raise the question of the validity of their arrest, it not having been based upon a warrant.

The disputed question is whether, under the circumstances, a misdemeanor was committed in the presence of the officers, since whatever they saw was observed while they were on private property on which a garage apartment then occupied by appellants was located. It is undisputed that the officers went there on the basis of a report only. While an unauthorized arrest is at the peril of the officer making it, there is no basis for the dismissal of the charge because of it. *Perkins* v. *City of Little Rock,* 232 Ark. 739, 339 S. W. 2d 859. Although it is speculated in the cited case that incriminating evidence obtained as a result of such arrest might be suppressed, here there was no motion to suppress the evidence nor was any objection made to the testimony of the officers as to what they saw at the time of the arrest. The only time that any question as to the admissibility of this testimony was raised was on a preliminary motion to dismiss the charges[1] and in a motion for new trial. The necessity of an objection to preserve a point for review in this court has been stated by this court many times See *Randall* v. *State,* 239 Ark. 312, 389 S. W. 2d 229. Any other rule would permit an accused to withhold objection for tactical reasons, speculating on a favorable jury verdict and subsequently raise the question in seeking a new trial.

The wisdom and appropriateness of this provision in this ordinance is a legislative question, not a judicial one.

I would affirm the judgment of the lower court.

---

[1]The record discloses no objection to the action of the court overruling this motion. No objection is pointed out in appellants' brief to either the overruling of the motion or the introduction of testimony.