## OSBORN, EX PARTE.

The judgments of a circuit court held, at a time other than that prescribed by law, are void, as held in *Brumley vs. The State*, (20 *Ark.*, 77.)

The ordinance of the convention of 1864, which ordained that all laws in force in this state on the 4th of March, 1861, are still in force, etc., necessarily repealed, by implication, the act approved November 18th, 1861, which provides for holding the terms of the circuit court of Pulaski county; and revived the act of 21st January, 1861.

The rule of repeal of statutes by implication is received with disfavor; but where a statute is revived, which is totally inconsistent with and repugnant to a later statute upon the same subject, as where effect cannot be given to both, the rule must apply.

*Motion for perpetual Supersedeas of Judgment.*

GALLAGHER & NEWTON, for the motion.

ROSE, contra.

Mr. Chief Justice WALKER delivered the opinion of the court.

This case comes before us upon a motion for an absolute super-sedeas and perpetual stay of the execution of the judgment of the Pulaski circuit court, rendered at its adjourned term, holden on the fourth Monday after the fourth Monday of August, 1865, at which term Osborn was convicted of murder in the second degree, and sentenced to the penitentiary for the term of five years: from which judgment an appeal was taken, and is now pending in this court.

The ground upon which the motion is predicated, is, that the trial, judgment and sentence of the defendant were had at a time, not provided by law for holding the circuit court in the county of Pulaski, and that, therefore, the judgment and sentence of the court are void, and should be perpetually superseded and stayed.

In order to determine this question it becomes necessary to ascertain whether the circuit court of Pulaski county was, or was not held at a time provided for by law; because, if it was not, it is very evident that the proceedings had in the case are *coram non judice*, and should be perpetually superseded and stayed. That such should be the case is fully settled by this court in the case of *Brumley vs. The State*, 20th *Ark. Rep.*, 77.

By reference to the statute fixing the times of holding the circuit court in Pulaski county, we find that, approved November 18th, 1861, which provides for holding the court in said county on the fourth Mondays after the fourth Mondays in March and and September, the latest. This act was passed after the ordinance of secession. That at the time this act passed, there was a state government in existence, under which its several departments might lawfully act, was definitely settled at the present term of the court in the case of *Hawkins vs. Filkins*. The act fixing the time for holding the court, was neither in violation of the constitution of the United States, nor of the state of Arkansas, was a proper subject of legislation, and the court holden thereafter in said county whilst that act remained in force, to be

a legal court must (as held in *Brumley vs. The State,*) have been holden at the times prescribed by law.

It is contended by counsel that this act was repealed by an ordinance of the convention held in January, 1864, which is in the following words: " And it is further hereby declared that all the laws in force in this state on the 4th of March, 1861, are still in force, not inconsistent with the provisions of this constitution, and which have not expired by limitation therein contained." By this ordinance, the code of statute laws in force on the 4th of March, 1861, was declared to be in force, or more properly, adopted as a code of laws for the administration of the state government under the new constitution. There is no clause expressly repealing the laws passed by the legislature of Arkansas after the 4th of March, 1861; but it is contended that they were by necessary implication repealed by force of the maxim *expressio unius est exclusio alterius.* In other words, that inasmuch as the convention, by ordinance, declared the laws of the 4th of March in force, it must be understood as having intended that no other laws than those should be in force. This rule of repeal by implication has been received with disfavor, and is quite limited in its application. 2 *Dwarris on Stat.,* 638, 673.

It is worthy of remark that this is not an ordinary case in which a single statute was passed, to stand in connection with other existing acts; but it was declaring in existence a code of laws for the government of the state under a new constitution, just such as is found in many of the scedules or ordinances which accompany every change of state government, after framing a new constitution: and it is not probable that it could have been the intention of the convention that any other code of laws, or any laws whatever should remain in force. Should we, however, assume that it was the intention of the convention to declare the act of 21st January 1861, in force, and to leave the act of the 18th November, 1861, unrepealed and in force also, the result would be, that there would be two acts in force fixing different times for holding the circuit court in Pulaski county. And when such is

32

the case, the rule is that the latter act repeals the former. *Sedg-wick on Stat.* 125.

In this case, therefore, it necessarily follows that the declaring of the act of 21st of January, 1861, in force, was by necessary implication a repeal of the act of 18th November, 1861.

In support of this conclusion we have a decision of the supreme court of the state of Maine, where the same question arose under circumstances not unlike those in the case under consideration. In that case, it was argued by counsel that the statute was not repealed, because a subsequent statute did not expressly repeal it—because the second statute contained nothing repugnant to it—because the act which separated Maine from Massachusetts did not repeal it, and was not inconsistent with the situation of the new state. MILLER, C. J., when considering this question, said: "It is necessary to consider the reasons which occasioned the introduction of the before mentioned provisions into the act of separation. It was evidently designed to prevent the confusion consequent upon the suspension of law, and the injury which would thereby result to the community and individuals. It was for the purpose of giving time to the legislature of this state, to re-enact, modify or repeal those laws as, on consideration, they should determine most for the interest, and best adapted to the interest of the state," and held, that where the legislature had revised the subject matter of any of the statutes of Massachusetts, and enacted such provisions as they deemed suitable to the wants of the people of the state, the former statutes are to be considered as no longer in force, though not expressly repealed. *Towle vs. Manett,* 3 *Greenleaf Rep.,* 22.

So, too, where some parts of a revised statute are omitted in the revising act, the parts omitted are not to be deemed as revived by construction, but are to be considered as annulled. *Smith's Com. on Stat. and Cons. Law,* 903. A subsequent statute revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on principles of law, as well as on reason and common sense, operate to repeal the former. *Id.,*

904, *Goodnow vs. Buttrech,* 7 *Mass.,* 142; *Bartlett vs. King,* 12 *Mass.,* 545.

After a careful consideration of this ordinance, taken in connection with the other acts of the convention, we thing it falls within the spirit of the rule laid down in the cases above referred to, and that it was evidently the intention of the convention to declare the laws of the state which were in force on the 4th of March, 1861, a code of laws to be in force in the state to the exclusion of all other laws, which laws so in force on the 4th of March, 1861, were to take effect and be in force from and after the adoption of the constitution of January, 1864, which was adopted by the people of the state to whom it was submitted for ratification and approval on the 16th day of March, 1864; from which time all other laws were, by necessary implication, repealed.

The acts of the legislature of Arkansas passed after the 4th of March, 1861, not in conflict with the constitution of the United States, nor of the state of Arkansas, were valid; and acts done under them whilst in force and rights acquired, remained valid and effectual, as if no such repeal had been made. *Smith* says that, " the rule that vested civil rights, acquired under law, are not affected by a repeal, is founded in good sense and reason, and is consistent with the fundamental principles of natural justice." *Com. on Stat.,* 881; *North Canal Street Road,* 10 *Watts,* 351; *Illinois & Michigan Canal vs. City of Chicago,* 14 *Ill. Rep.* 337.

There is nothing in the case of *Hawkins vs. Filkins,* which in any manner conflicts with the conclusions at which we have arrived. The question considered in that case was whether there existed a state government after the ordinance of secession, under which the several departments of the state government remained, competent to make and execute the laws within the state, and it was held that such government did exist, and that the administration of the state government under it was valid except when in conflict with the constitution and laws of the United States: that the convention that framed the constitution of 1864, had not the

power to declare void *ab initio*, the acts of the convention of 1861, and the entire action of the state government under it; and that upon a fair construction of the ordinance, the convention had not intended to do more than to declare the action of the convention of 1861, and of the state government under it, void so far only as such action was in conflict with the constitution and laws of the United States. The question as to whether the convention of 1864, had power to repeal the acts of the legislature, whether before or after the passage of the ordinance of secession was not before the court in *Hawkins vs. Filkins*. In that case, the judgment, the validity of which was under consideration, was renderd in September, 1861, and before the act of November, 1861, which changed the times of holding the circuit court of Pulaski county, had passed, and consequently no question as to the effect of that law could have been considered.

Looking into the record in the case before us, we find that the court that tried the case of *The State vs. Osborn*, was held at the regular term of the court, appointed for the holding of said court under the act of the 21st of January, 1861, which act was, by the ordinance of the convention of 1864, declared to be in force; and consequently, that the judgments and decisions of said court within its proper jurisdiction were valid.

The motion for perpetual supersedeas is denied.