STATE EX REL. TRIMBLE *v.* KANTAS.

Opinion delivered May 27, 1935.

*J. W. Trimble, Rex Perkins* and *Oscar E. Williams,* for appellant.

*Bernal Seamster* and *Price Dickson,* for appellee.

*R. W. Robins, amicus curiae.*

BAKER, J. Appellants' statement of this case may be adopted by us as being concise and yet sufficiently full to show the issues involved.

"This appeal involves the validity of Special Acts of the General Assembly prohibiting the sale of intoxicating liquors within three miles of the University of Arkansas, as provided in Special Acts of 1875 (page 206), 1905 (page 692), and 1907 (page 649). In other words, are those acts repealed by acts Nos. 69, 108, and 109 of 1935?

"It was the contention of the plaintiffs that the acts of 1875, 1905, and 1907 have not been repealed or amended, notwithstanding acts Nos. 69, 108, and 109 of 1935, called the Clerget Wine Bill, the Thorn Bill, and the Dillon Bill, respectively. The defendants contend that these special acts were repealed by implication. If the special acts establishing a dry zone around the University of Arkansas are still in effect, then plaintiffs were entitled to the relief sought."

Without quoting further, we add to the above statement that there were other special acts or local bills passed by the General Assembly enlarging the scope or effect of the special measures above mentioned, including act No. 372 (page 1059), approved May 31, 1909, making it unlawful to manufacture or sell, or give away, or be interested in the manufacture, sale, or giving away of any alcoholic, spirituous, ardent, vinous, malt, or fermented, or any intoxicating liquors of any kind or char-

acter in Washington County, Arkansas. This is the last act to which our attention has been called.

These several acts will be deemed legal or illegal according to our opinion, as their legality must be determined by the same rule that governs or controls the ones specifically mentioned and set forth in the complaint.

We pretermit a discussion of the passage of the later special acts as repealing those first enacted. They were all for the general purposes, and, if any one of them is good, the prayer of the complaint might properly have been granted.

It may be said in the beginning that the liquor question has been productive of much general and special legislation in this State.

The law prohibiting the sale of intoxicating liquors was progressive, developing from control in counties by ballot at biennial elections, by order of county courts upon petitions of a majority within three miles of a properly designated central point, also by special or local acts of the General Assembly. Finally, prohibition was made State wide by an act popularly called the "Bone Dry Law" (Acts 1915, p. 98). The liquor control controversy later became national in scope and culminated in the passage of the Eighteenth Amendment to the United States Constitution. The trend up to that time was to favor almost every form of prohibition legislation.

A short time ago, however, there came a revulsion of sentiment, and, in this State, by act No. 151 of the General Assembly (page 467), approved March 24, 1933, a convention was provided for, the effect of which was to determine the policy of the State on the controversial matter, by an election held on the 18th day of July, 1933, by ballot, upon Amendment No. 21 to the United States Constitution, the purpose of which amendment was to repeal the Eighteenth Amendment. At that election the vote stood "for repeal" 68,262, "against repeal" 45,925 votes.

Thereafter, the first successful step to legalize the sale of liquor, in the State of Arkansas, was act No. 7 (page 19), approved August 24, 1933, of the Extraordinary Session commencing on the 14th day of August of

that year. It authorized the sale of light wines and beer. Acts Nos. 69, 108, and 109 were enacted by the General Assembly of 1935. Act No. 69 is known as the "Clerget Wine Bill"; act No. 108 as the "Thorn Bill," which provides that it may be cited as the "Arkansas Alcoholic Control Act"; and act No. 109 was referred to as the "Dillon Bill." These acts authorized the sale of wines, beer, and other alcoholic liquors.

As stated in the complaint filed in this cause, the several bills provide for the repeal of all laws or parts of laws in conflict with their provisions.

(1) We recognize under the rule of construction that the passage of a general act does not always serve to repeal a local or a special act, unless it so expressly provides, but there is another principle not less forceful, when applicable, repeal by implication.

(2-5) Repeals by implication must be recognized when it is ascertained that such was the legislative intent. When the new or later act cannot be harmonized with the terms and necessary effect of the earlier act, judicial construction declares the effect. In such cases the legislative announcement last made must be declared to be in effect, if otherwise valid, and the first must yield, at least, to the extent of conflicting provisions. In cases wherein the last legislative act purports to cover the entire field of the subject of legislation, the first will ordinarily be treated as repealed, unless the new or later act is intended to be cumulative. But it is certain that contradictory, repugnant acts, or provisions thereof, cannot be in full force and effect at the same time.

(6) Many examples of this form of constructive repeal appear in cases wherein by amendment the Legislature substitutes a new section for a corresponding section in some former act. In such instances, the matter of the repeal of the original section is never questioned, although there may be no express declaration of the intention to repeal it. Constructive repeals, or implied repeals, must be given full effect where there is irreconcilable conflict or repugnancy between the first and later act.

We ascribe to the Legislature the ability to know or ascertain the effect of former enactments of that body, and, of course, the knowledge of the effect of a new act upon any matter properly the subject of legislation, and it becomes our duty, without regard to individual or personal viewpoint or policy, to declare that legislative intent as fully and completely as we can ascertain it.

Therefore, it must appear that we cannot conceive that the Legislature attempted to make effective, at the same time, conflicting statutes or parts of statutes that are repugnant one to another, and which on that account would result in a chaotic condition, intolerable by reason of that lack of harmony.

In Lewis' Sutherland Statutory Construction, we find this better announcement of the law: "The repugnancy being ascertained, the later act or provision in date or position has full force, and displaces by repeal whatever in the precedent law is inconsistent with it." See section 247, pp. 461, 462. Cited in support of this authority are cases of considerable number from almost every appellate court in America. One of the earliest examples of the cases cited is the case of Ex parte *Osborn*, 24 Ark. 479, in which Chief Justice WALKER, delivering the opinion of the court, after announcing that repeals by implication were not favored, said in regard to an act then under consideration: "Should we, however, assume that it was the intention of the convention to declare the act of 21st January, 1861, in force, and to leave the act of the 18th November, 1861, unrepealed and in force also, the result would be, that there would be two acts in force fixing different times for holding the circuit court in Pulaski County. And when such is the case, the rule is that the latter act repeals the former."

(7) Again in *Coats* v. *Hill*, 41 Ark. 149, quoting from the second headnote, we find, "Repeals by implication are not favored. To produce such result the two acts must be upon the same subject and there must be a plain repugnancy between their provisions; in which case, to the extent of the repugnancy, the latter act repeals the former."

In passing, it is pertinent to say that we still adhere to the principle above announced. *Hazelrigg* v. *Board of Penitentiary Commissioners*, 184 Ark. 154, 40 S. W. (2d) 998; *Ouachita County* v. *Stone*, 173 Ark. 1004, 293 S. W. 1021.

An illuminating discussion will also be found in the case of *Louisiana Oil Ref. Co.* v. *Rainwater*, 183 Ark. 482, 488, 37 S. W. (2d) 96.

There is no gainsaying the determinative force of the following cases: *Massey* v. *State, for Use of Prairie County*, 168 Ark. 174, 269 S. W. 567 (see cases there cited); *King* v. *McDowell*, 107 Ark. 381, 155 S. W. 501; *State* v. *White*, 170 Ark. 880, 281 S. W. 678; *Johnson County* v. *Town of Hartman*, 177 Ark. 1009, 8 S. W. (2d) 469.

Again quoting from Lewis' Sutherland Statutory Construction, page 463: "Subsequent legislation repeals previous inconsistent legislation, whether it expressly declares such repeal or not. In the nature of things it would be so, not only on the theory of intention, but because contradictions cannot stand together. The intention to repeal, however, will not be presumed, nor the effect of repeal admitted, unless the inconsistency is unavoidable and only to the extent of the repugnance."

We do not stop to argue with any who may believe that absolute prohibition of the sale of intoxicating liquors can prevail in the same jurisdiction wherein there is a legal right to sell the same.

The intention of the Legislature is evidenced not only by the facts above stated, but act No. 109, by its title, by which it may be cited, as provided therein, "Arkansas Alcoholic Control Act," is practically conclusive. The acts legalize the manufacture, sale, etc. They are not prohibitory, but regulatory. We think it unnecessary to quote from or analyze the several acts, as no other conclusion can be reached, except that it was the intention of the Legislature to provide for legalized traffic and for regulation thereof.

The argument is made, however, that since repeals by implication are not favored, and since the Legislature did not expressly provide in these three acts, above men-

tioned, for the repeal of the special and local acts, that the local acts are still in effect and that legal sales can be had only in the territory or parts of the State in which there has not been any local or special act prohibiting the traffic. A very large portion of the State has, at one time or another, had whatever benefit might have been derived from special or local acts, and other prohibitory measures of local application. Then it must appear that only in the remaining portion of the State, under such construction, as we are asked to give these acts, could intoxicating liquors be handled legally.

As stated above, we ascribe to the Legislature knowledge of these conditions, and further that the Legislature was not attempting to do a vain thing. If it intended to authorize and make legal the traffic in that portion or part of the State wherein no local or special act or measure had been in force, then it must have intended local and special legislation. To give that construction to the acts would necessarily declare them illegal, as being in violation of Constitutional Amendment 14, adopted in 1926, which provides: "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

(8) It follows, therefore, that the above and foregoing acts Nos. 69, 108, and 109 must operate to repeal conflicting and repugnant acts. It would be as reasonable to argue that the commonly designated "Bone Dry Law" is still effective as to argue that other conflicting statutes are in full force and effect.

(9) In addition to the foregoing, the Legislature, taking notice of former acts and the effect thereof, must have recognized the effect of act No. 7 (page 19), approved August 24, 1933, of the Extraordinary Session. That act authorized the sale of light wines and beer, and among other things provided: "All laws, local or special, forbidding the sale of light wines and beer as herein defined are hereby repealed." Section 29.

It is only necessary to say that the laws mentioned in the last-quoted sentence were not merely modified so as to authorize the legal sale of light wines and beer, but local and special laws that forbade the sales of light

wines and beer were repealed. Such local and special laws have not been in effect since the approval of said act No. 7, approved August 24, 1933.

The chancellor denied the prayer of petitioners. By the decree of the chancery court, the local or special acts were held to have been repealed. This holding was correct.

Affirmed.