Crim. 4026.

Opinion delivered May 10, 1937.

*Robert J. White,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. By the order and judgment of the Logan circuit court appellant was enjoined from the further sale of beer in his place of business in Paris, Logan county, Arkansas, and the sheriff of that county was directed to destroy the stock of beer appellant then and there had on hand, and this appeal is from that judgment. The suit was brought by the prosecuting attorney of the circuit of which Logan county is a part under the authority of § 6196, Crawford & Moses' Digest.

The petition for the injunction alleged the following grounds for the relief prayed: (a) That the sale of beer is frequently made to minors; (b) that minors are permitted to congregate and buy and drink beer in appellant's place of business; (c) that beer is sold to people already under the influence of intoxicating liquors, and to habitual drunkards. Three other grounds are alleged which we find it unnecessary to discuss. A demurrer to the petition was overruled, to which action of the court an exception was saved.

Section 6196, Crawford & Moses' Digest, appears as § 1 of act 109 of the Acts of the General Assembly of 1915, pages 408 et seq. That act is entitled "An act to define certain public nuisances, and to provide for the abatement thereof."

The constitutionality of this act in its entirety was upheld by a divided court in the case of *Marvel* v. *State,* 127 Ark. 595, 193 S. W. 259, 5 A. L. R. 1458. Two members of the court dissented upon the ground that this jurisdiction could not be conferred upon the chancery court, but the dissenting judges concurred in the view that this jurisdiction could be and had been conferred upon the circuit courts. It was the opinion of the majority that the act conferring this jurisdiction upon both chancery and circuit courts was valid and constitutional. It had previously been held, in the case of *Hickey* v. *State,* 123 Ark. 180, 184 S. W. 459, that maintaining a place of business where orders were taken for the sale of intoxicants in violation of law was a nuisance which the circuit courts had been given power to abate by injunction. See, also, *Cole* v. *State,* 144 Ark. 533, 222 S. W. 1060; *Adams* v. *State,* 153 Ark. 202, 240 S. W. 5, and *Nichols* v. *State,* 171 Ark. 987, 287 S. W. 190.

It is insisted, however, that this act of 1915 has been repealed by an act known as the "Arkansas Alcoholic Control Act," the same being act 108 of the Acts of 1935, page 258 et seq. The contention stated is based upon the provisions of article I of this Control Act, the purpose of which article was to define the words and terms therein employed. Section 6 thereof reads in part as follows:

"The word 'spirituous' shall mean liquor distilled from the fermented juices of grains, fruits or vegetables and containing more than twenty-one (21%) per centum of alcohol by weight, or any other liquids containing more than twenty-one (21%) per centum of alcohol by weight. The word 'vinous' shall mean the fermented juices of fruits, except wine, and containing more than five (5%) per centum and not more than twenty-one (21%) per centum of alcohol by weight. The word 'malt' shall mean liquor brewed from the fermented juices of grain and containing more than five (5%) per centum of alcohol by weight. Beer containing not more than five (5%) per centum of alcohol by weight and all other malt beverages contain not more than five (5%) per centum of alcohol by weight are not defined as malt liquors, and are excepted from each and every provision of this Act."

The act provides for the manufacture, sale, classification, possession or other disposition of spirituous, vinous, and malt liquors, and makes an appropriation of funds for the administration and enforcement thereof. It provides further for local option elections, and for the license taxes and permit fees to be charged persons who avail themselves of the provisions of the act, and for the revocation of such licenses and permits.

Subdivision (a) of § 1 of article 6 of the act provides that "any person who shall sell, give away, or dispose of intoxicating liquor to a minor or habitual drunkard or an intoxicated person shall be guilty of a misdemeanor * * *." The argument is that this provision does not apply to beer, and that the act itself has repealed all the provisions of other acts regulating and restricting the sale of beer because of the provision relating to beer appearing in § 6 of article 1 first above quoted; in other words, that it is not unlawful to sell beer to minors, or to habitual drunkards, or any other person. It will be observed that article 1 defines the restricted words "spirituous," "vinous," and "malt," and does not employ or define the more comprehensive words "intoxicating liquors" appearing in subdivision (a) of § 1 of article 6. All of these are intoxicating liquors, and

subdivision (a) of § 1 of article 6 makes it unlawful to sell such liquors to a minor, or habitual drunkard, or an intoxicated person. Must we—because of the provision of article 1, above quoted—hold that beer may be legally sold to minors? If such a result has been accomplished by the Act of 1935, it is apparent that there has been a reversal of the policy followed in this state throughout its entire history in regard to prohibiting the sale of intoxicants to minors, at least. We think this was not the legislative intent.

This act 108 does not repeal, in its entirety, act No. 7 of the Acts of the Extraordinary Session of the General Assembly of 1933, page 19, approved August 24, 1933. Indeed, § 6 of article 1 of act 108, above quoted, is immediately followed by a paragraph reading as follows: "It is further provided that malt and vinous beverages containing more than 3.2 per cent. of alcohol by weight and not more than 5 per cent. of alcohol by weight shall be taxed and regulated as provided for malt and vinous beverages containing not more than 3.2 per cent. alcohol by weight under the provisions of act No. 7 of the Acts of the Extraordinary Session of the General Assembly of 1933, approved August 24, 1933." We must, therefore, look to act No. 7 to determine how malt and vinous beverages containing more than 3.2 per cent. of alcohol by weight and not more than 5 per cent. of alcohol by weight, "shall be taxed and regulated," and when we have examined act No. 7 we find that § 26 thereof reads as follows: "Section 26. No sale of beer or wine shall be made to minors." As by way of emphasis, this § 26 contains no other provision. It is, therefore, unlawful to sell beer or wine to minors.

This view is confirmed by recalling the history of our legislation on the sale of intoxicants. There was passed at the 1915 session of the General Assembly act No. 30, page 98, commonly known as the "Bone Dry Law," which prohibited, after January 1, 1916, the sale "of any alcoholic, vinous, malt, spirituous, or fermented liquors, or any compound or preparation thereof commonly called tonics, bitters or medicated liquors within

the state of Arkansas." It was thereafter unlawful to sell any of such liquors in this state until the passage of act No. 7, approved August 24, 1933, at the Special Session of the General Assemb'y of 1933. At that time the drought was partially broken by this act No. 7, which was "An act to permit the manufacture, sale, and distribution within the state of Arkansas of light wines and beer, and to provide for taxing the manufacture, sale and distribution of such products, and for other purposes." It is in this act, as above stated, where it is enacted that "No sale of beer or wine shall be made to minors." Act 108 was not passed to authorize and regulate the sale of beer. That authority had already been conferred. Act 108 provides an elaborate scheme for the sale of spirituous and vinous as well as malt liquors, but, as has been shown, act No. 7 was not repealed in its entirety, and the prohibition against the sale of beer and wine to minors remains in full force and effect.

The case of *State ex rel. Trimble* v. *Kantas,* appears to have been twice reported, first in 190 Ark., at page 1092, 82 S. W. (2d) 847, and again in 191 Ark. 22. It was there contended that special acts prohibiting the sale of intoxicants had been repealed, not only by act 108 of the Acts of 1935, above referred to, but also by acts Nos. 69 and 109 of the same session. It was there held that this result had been previously accomplished by act No. 7 of the Extraordinary Session of 1933, above referred to, which was recognized as being in force and effect except in so far as it was in conflict with the later acts passed at the, 1935, session. Therefore, if appellant engaged in selling beer to minors, he violated the law, and § 6196, Crawford & Moses' Digest, conferred jurisdiction upon the courts, either circuit or chancery, to abate the business as a public nuisance.

It is argued that the petition filed by the prosecuting attorney failed to state a cause of action, because it did not "define the kind or alcoholic content of any of the substances alleged to have been sold. * * *."

There are several answers to this contention, the first being that the petition did designate the alcoholic

drink sold. It was alleged that appellant sold beer to minors. The second answer is that it is not required that the petition designate the particular kind of liquor sold. It has been frequently held that this allegation is not essential, even in an indictment charging the sale of intoxicants. *Johnston* v. *State,* 142 Ark. 402, 219 S. W. 25; *Rogers* v. *State,* 133 Ark. 85, 201 S. W. 845; *Wald* v. *State,* 136 Ark. 372, 206 S. W. 675; *Gramlich* v. *State,* 135 Ark. 243, 204 S. W. 848; *Rinehart* v. *State,* 160 Ark. 129, 254 S. W. 351; *Jackson* v. *State,* 160 Ark. 198, 254 S. W. 531. And, finally, it is immaterial what kind of liquors were sold to minors if they were in fact intoxicating.

It is urged that the testimony is insufficient to support the finding that appellant sold beer to minors. The testimony offered to support that allegation is to the following effect. Appellant operated a place of business in Paris, Logan county, known as the Green Frog, which was a combination grocery store, meat market and cafe, where wine and beer were sold under licenses issued by both the state and federal Governments.

Lola Woods testified that she was 17 years of age, and that she and two other girls, one 17 and the other 14, went to appellant's place, where she was served with wine and the other girls with two bottles of beer each. The drinks were bought by Joe Lewis, their escort. Lewis bought the drinks, including a bottle of wine, at the counter, and brought them to the table where they were drinking in plain view of all persons in the room. She further testified: "I have been in there several times and drank beer." The beer was not sold to her, but to her escort. She testified that Uel Downs, a boy 14 or 15 years old, had bought beer in appellant's place. He bought beer for her and for himself, which was drunk at one of the tables provided for that purpose. She had seen Uel in there several times drinking beer. He would walk up to the counter and get it.

Ruby Marshall testified that she was 13, and had been with Joe Lewis when he bought beer for her and himself, and that she had seen him do this "just about

two or three times, if that much." They drank the beer at a table "close to the counter" where it was sold. Lola Woods was with her then. The beer was in bottles. The employees "were standing right there." At that time the place was only a meat market and cafe. The grocery store was later installed. She had been there with Lola "over two or three times." On one occasion Lola drank two or three bottles of beer. They were close to the waitress who served them. She had seen Uel drink beer there.

The deputy city marshall testified that he had seen girls in appellant's place, did not know whether they were drinking beer, but he saw them with beer on the table. He carried the Robbins boy out of there drunk, did not know whether the boy had gotten drunk there or not. Certain other testimony was offered to the same effect.

Opposed to this, testimony was offered that appellant did not sell beer to minors, and had directed that it should not be done, and it had not been done. Other witnesses testified that they knew what was required to constitute a place a public nuisance, and appellant's was not such a place. That they had been there frequently and the place was always conducted orderly. Still other witnesses testified that appellant and his place had an excellent reputation.

These were all questions of fact for the court. If beer was sold to minors, the opinion of witnesses as to whether this constituted the place a public nuisance cannot prevail if the law makes it such.

It is true there was no testimony to the effect that appellant had himself sold beer to minors, or had directed it to be done. But it was not essential that this proof be made. This is not an indictment for the illegal sale of beer to minors, and is not a trial under an indictment. The prayer for the injunction is based upon the allegation that appellant conducted and maintained a place where beer was sold in violation of the laws of the state, and if this is established by the testimony, as we think it is, appellant is maintaining a place declared by law to

be a public nuisance, even though the sales were made by his employees, and not by himself, and without his knowledge or consent. It was held, in the case of *Edgar v. State,* 45 Ark. 356, to quote the first headnote, that "A sale of liquor to a minor, by the agent or bartender of the owner of a saloon, is a sale by the owner, for which he is liable whether present or not." To the same effect see, also, *Waller* v. *State,* 38 Ark. 656; *Cloud* v. *State,* 36 Ark. 151; *Robinson & Warren* v. *State,* 38 Ark. 641.

We conclude, therefore, that the testimony supports the finding that appellant had violated § 6196, Crawford & Moses' Digest, and the judgment is, therefore, affirmed.

McHANEY and BUTLER, JJ., dissent.