ROGERS *v.* STATE EX REL., ROBINSON, PROSECUTING ATTORNEY.

Crim. 4058

Opinion delivered October 18, 1937.

*George M. Bennett,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* for appellee.

SMITH, J. In a proceeding brought by the prosecuting attorney of the circuit of which Logan county is a

part, it was, on May 17, 1937, adjudged by the Logan circuit court that one Ken Flannery had so conducted his place of business in the city of Paris in said county as to be a public nuisance, because of the law violations which he permitted in said place. Authority for this proceeding is conferred by § 6196, Crawford & Moses' Digest. *Digiacomo* v. *State, ante,* p. 24, 105 S. W. (2d) 78.

The order and judgment of the court in that proceeding reads as follows: "It is therefore considered, ordered and adjudged, that the said place of business is a public nuisance and that the same is hereby ordered closed permanently and the defendant, Ken Flannery, his servants, agents, and employees, are hereby restrained from the further operation of the said business in the city of Paris, Arkansas, permanently and that the plaintiff have and recover of the defendant all of its costs herein laid out and expended." Later, Flannery was cited for contempt of court, it being alleged in the citation that he had violated the above order of court. One M. A. Rogers intervened in this proceeding, and on the final hearing thereof the following testimony was offered. Flannery was the owner and operator at South Elm Street in the city of Paris, Arkansas, of a snooker hall and beer parlor. There was no appeal from the order of court adjudging his place to be a nuisance, and Flannery abided this judgment until July 31, 1937, when his equipment was removed from the place ordered closed to another building on the west side of the public square on Magazine street in the city of Paris. That place was opened by intervener, M. A. Rogers. Flannery assisted Rogers in procuring a lease of the building on Magazine street and assisted, also, in removing the fixtures and equipment thereto from the building on Elm street, and was present in and about said building and snooker hall during the first few days after it was opened in the building on Magazine street. Rogers is a cousin of Mrs. Flannery.

It further appears, however, that Rogers purchased this equipment from Flannery for the agreed price of $2,897, of which $250 was paid in cash by the check of

Rogers to the order of Flannery on a local bank. This check was offered in evidence, and it was shown by the testimony of the bookkeeper of the bank that it had been honored in due course of business. The balance of purchase money was paid by the assumption of payment of an account due by Flannery to the Patterson-Hoffman Cigar Company for $647, and the balance of the purchase money was evidenced by the promissory notes of Rogers to the order of Flannery. It was also shown that after opening the new place of business Rogers paid the license required by the ordinances of the city of Paris to operate the business, and that he also paid $60 to the inspector of revenues for licenses to sell beer and cigarettes and to operate the snooker hall. The employee in charge of the operation of the new place of business testified that he had been employed so to do by Rogers, and that Flannery had no interest in or control over the business. Flannery testified that his only connection with the new business had been to find a purchaser for his property.

Upon this testimony, which appears to be undisputed except as to the inferences deducible therefrom, the court entered the order from which this appeal comes reading as follows:

"Now on this 11th day of August, 1937, comes the above entitled cause for hearing and the plaintiff appearing by her prosecuting attorney, Ralph Robinson, and the defendant appearing in person and by his attorney, Geo. M. Bennett, and announce ready for trial. Thereupon the court was duly and sufficiently advised in the premises by the pleadings and the testimony and exhibits, and from all of which the court finds: that the defendant, Ken Flannery, was and had operated his said place of business on the west side of the square in the city of Paris in violation of the order and judgment of this court made and entered on May 17th, 1937, and that said place of business now being operated by the said defendant, Ken Flannery, so operated in violation of the judgment of this court so made on the 17th day of May, 1937, should now be abated and closed permanently and the defendant, Ken Flannery, found to be in contempt of the court.

"It is therefore the order and judgment herein that the business now operated on the west side of the square in the city of Paris, be permanently abated and closed and the defendant, Ken Flannery, be held in contempt of court and a fine against the said defendant, Flannery, for the said contempt in the sum of $25."

We need not inquire into the validity of this judgment, insofar as it affects Flannery, for the reason that he has not appealed. The effect of the judgment, insofar as it affects Rogers, is to deprive him of property which the undisputed testimony shows he had purchased from Flannery. In defense of this judgment the following statement is made in the brief filed on behalf of the state: "Necessarily the finding of the court that Ken Flannery was operating the snooker hall and beer parlor business on the west side of the square was a finding by the court that appellant had not purchased same as he claimed and that the appellant's purchase was a device to enable Ken Flannery to continue in business after his snooker hall and beer parlor business had been permanently abated as a public nuisance."

This judgment cannot be sustained on the ground stated, for the reason that the testimony, hereinabove recited, does not support the finding that Rogers "had not purchased same as he claimed." The undisputed testimony is to the contrary.

It must be remembered that the original judgment of the court, upon which the contempt proceeding is had, did not direct the destruction or sale, under § 6201, Crawford & Moses' Digest, of the property which Rogers purchased. It directed that Flannery's place be "closed permanently," and that place has not been reopened. It further ordered that "Ken Flannery, his servants, agents and employees are hereby restrained from the further operation of the said business in the city of Paris, Arkansas," and it does not appear that his servants, agents or employees have further operated the business. Rogers has not operated that business, but has opened a place of business of his own on another street, and it is not even contended that Rogers has violated any law in so

doing. On the contrary, it is undisputed that he has obtained licenses from the proper authorities authorizing him to engage in business.

Special Act No. 469 of the Acts of 1921, p. 993, which prohibited the operation for hire of any billiard hall or pool room within three miles of any church or school in Logan and Craighead counties, has been repealed by act No. 17 of the Acts of 1935, p. 38. But prior to this repealing act, and while the Special Act of 1921 was in force in Logan county, it was held, in the case of *Ross, Graham and Logan* v. *State,* 184 Ark. 385, 42 S. W. (2d) 376, that snooker parlors may not be enjoined as nuisances, even though the persons conducting them may be prosecuted under the statute prohibiting the operation of billiard rooms. This Ross case arose in Logan county while the Special Act of 1921 was in force. That opinion defined the word "snooker" to be a game "very much like pool, played on a pool table with balls and cues, but with more balls, twenty, instead of fifteen, as in pool, and is a more scientific game." So that, even though the operation of a billiard hall was a violation of the law in Logan county as it formerly was, its operation could not be enjoined, as was done in the Ross case, and as has been done here. Of course, if Rogers should so operate his place of business, as Flannery was adjudged to have done, as to constitute a nuisance under § 6196, Crawford & Moses' Digest, by permitting the violations of law denounced by that statute, he, too, might be enjoined; but, as has been said, no testimony was offered to the effect that Rogers had violated the law or had so conducted his place of business as to constitute a nuisance under § 6196, Crawford & Moses' Digest. It was shown only that he purchased equipment which had formerly been used by his vendor in a place where that section of the statute had been violated. Rogers has the licenses which make legal his sale of beer and his operation of a snooker hall, and unless he so conducts his place of business as to make it become a nuisance under § 6196, Crawford & Moses' Digest, he may not be deprived of the use and enjoyment of property which he has purchased. This property is unlike the deodand of the common law, and the mere pos-

session thereof neither violates the law nor constitutes a nuisance.

It must be remembered that § 6196, Crawford & Moses' Digest, under which the court below proceeded, has no application to "snooker parlors" or pool halls and billiard rooms, but has application only to the sale of intoxicating liquors in violation of law.

In the case of *Parker-Harris Co.* v. *Tate, Sheriff*, 135 Tenn. 509, 188 S. W. 54, L. R. A. 1916F, p. 935, it was sought to enforce the lien given by the statute of Tennessee upon an automobile for injury done by it as prior to the right of a conditional vendor of the machine. To sustain this contention the principle was invoked upon which the common-law deodand was based. But the Supreme Court of Tennessee, in the case just cited, overruled this contention and said the doctrine had never been recognized in this country, and was expressly forbidden by the Constitution of the state, which prohibits corruption of blood and forfeiture of estate. Section 17 of Art. 2 of our own Constitution provides that "No conviction shall work corruption of blood or forfeiture of estate."

It follows, therefore, that appellant Rogers may not be deprived of his property because some portion thereof had formerly been used in another place of business where the law against the illegal sale of intoxicating liquors was violated by his vendor.

The judgment must, therefore, be reversed, and it is so ordered, and the proceeding will be dismissed.