The Honorable Mary Anne Salmon State Senator #29 Heritage Park Circle North Little Rock, AR 72116
Dear Senator Salmon:
You have presented the following questions for my opinion:
 (1) In light of A.C.A. § 5-73-122 and A.C.A. § 5-73-306, as amended by Act 1110 of 2003, is it currently lawful for a person with a concealed handgun permit pursuant to A.C.A. § 5-73-301 et seq. to carry a concealed handgun in a municipal park in Arkansas?
 (2) If it is unlawful for a person described in Question 1 to carry a concealed handgun in city parks, may a Parks Commission authorize such a person to carry a concealed handgun in a city park for purposes other than those stated in A.C.A. § 5-73-122(a)(3)?
 (3) If it is lawful for a person described in Question 1 to carry a concealed handgun in city parks, may a Parks Commission prohibit such a person to carry a concealed handgun in a city park pursuant to A.C.A. § 5-73-306(b)(1)?
RESPONSE
Question 1 — In light of A.C.A. § 5-73-122 and A.C.A. § 5-73-306, asamended by Act 1110 of 2003, is it currently lawful for a person with aconcealed handgun permit pursuant to A.C.A. § 5-73-301 et seq. to carry aconcealed handgun in a municipal park in Arkansas?
It is my opinion that it is currently lawful for a person who has a concealed handgun permit issued under the authority of A.C.A. § 5-73-301et seq. to carry a concealed handgun in a municipal park in Arkansas unless the municipality has prohibited the carrying of handguns in the park by the posting of signs, as discussed in response to Question 3.
In order to explain my conclusion, I must review some of the history of the Arkansas statutes governing the carrying of weapons.
In 1977, the General Assembly passed Act 549, now codified at A.C.A. §5-73-122, which prohibits the carrying of firearms in certain publicly owned buildings and facilities, in the State Capitol, or in the Justice Building. The statute defines the term "facilities" to include municipally owned or maintained parks, athletic fields, and other recreational property. In 1995, the General Assembly passed Act 411, now codified at A.C.A. § 5-73-301 et seq., which authorizes the carrying of concealed handguns with a duly issued license. The part of Act 411 that is now codified at A.C.A. § 5-73-306 specified certain locations into which handguns could not be carried even with a license. The list of such locations included all of the locations that had been previously specified in A.C.A. § 5-73-122, plus others. As previously noted, municipal parks were among the specified locations in which firearms were prohibited. In 2003, the General Assembly passed Act 1110, which amended the list set forth in A.C.A. § 5-73-306. The amendment removed municipal parks from that list. The effect of this change was to permit persons with concealed handgun licenses to carry handguns into municipal parks (subject, of course, to the possible impact of A.C.A. § 5-73-306(b).)
I interpret this series of developments as follows: In 1977, the General Assembly expressed a clear intent to prohibit firearms from being carried into municipal parks. In 1995, the General Assembly reiterated that express intent, which it apparently believed was necessary to do in light of the fact that it was simultaneously authorizing the carrying of concealed handguns generally. In 2003, by removing municipal parks from the list set forth in A.C.A. § 5-73-306, the General Assembly expressed a clear intent to permit persons with concealed handgun licenses to carry handguns in municipal parks. This intent is clear not only from the language of the act itself, but also from the title of the act: "An Act to Permit a Person to Carry a Concealed Handgun Into a Restaurant or Public Park." Acts 2003, No. 1110, Title. The General Assembly did not express any intent to affect the other locations listed in A.C.A. §5-73-122 (and A.C.A. § 5-73-306), such as the State Capitol or the Justice Building, nor did it express any intent to permit the carrying of any firearms other than handguns in municipal parks. Accordingly, I interpret Act 1110 as implicitly repealing the portion of A.C.A. §5-73-122 pertaining to public parks and with respect to persons who have concealed handgun licenses, but not as repealing any of the other aspects of A.C.A. § 5-73-122. I base this interpretation on the well-established rule that when the provisions of two acts are irreconcilably in conflict with one another, the provisions of the later act prevail and will supplant the earlier act to the extent of the conflict. Uilkie v. State,309 Ark. 48, 827 S.W.2d 131 (1992); State Ex Rel. Purcell v. Jones,242 Ark. 168, 412 S.W.2d 284 (1967); State Ex Rel. Trimble v. Kantas,191 Ark. 22, 82 S.W.2d 847 (1935); Dicken v. Missouri Pacific Railroad Co.,188 Ark. 1035, 69 S.W.2d 277 (1934). In my opinion, the provision ofAct 1110 of 2003 deleting municipal parks from the list of prohibited locations is in irreconcilable conflict with the portion ofAct 549 of 1977 (A.C.A. § 5-73-122) that prohibits the carrying of handguns in municipal parks. Act 1110 therefore impliedly repeals that portion ofAct 549 of 1977 that pertains to the carrying of handguns in municipal parks, to the extent that it affects persons who have concealed handgun licenses. (I reiterate that the remaining parts of Act 549 of 1977
(A.C.A. § 5-73-122) remain in effect under this reading.)
For the above-stated reasons, I conclude that it is currently lawful for a person who has a concealed handgun permit issued under the authority of A.C.A. § 5-73-301 et seq. to carry a concealed handgun in a municipal park in Arkansas unless the municipality has prohibited the carrying of handguns in the park by the posting of signs, as discussed in response to Question 3. Other firearms cannot be carried in municipal parks (or in the other locations specified in A.C.A. § 5-73-122) even if the city has not posted signs, and persons who do not have concealed handgun licenses cannot carry handguns or other firearms into municipal parks.
Question 2 — If it is unlawful for a person described in Question 1 tocarry a concealed handgun in city parks, may a Parks Commission authorizesuch a person to carry a concealed handgun in a city park for purposesother than those stated in A.C.A. § 5-73-122(a)(3)?
Because I have opined in response to Question 1 that it is currently lawful for a licensed person to carry a concealed weapon in city parks (unless the municipality has prohibited the carrying of concealed weapons in city parks by the posting of signs), this question is rendered moot.
Question 3 — If it is lawful for a person described in Question 1 tocarry a concealed handgun in city parks, may a Parks Commission prohibitsuch a person to carry a concealed handgun in a city park pursuant toA.C.A. § 5-73-306(b)(1)?
It is my opinion that a municipality (or a municipal parks commission, exercising delegated power) may prohibit persons who have concealed handgun permits from carrying concealed handguns in city parks, by the posting of signs.
I base this conclusion on A.C.A. § 5-73-306(b)(1), which states:
 (b)(1)(A) In addition to the places enumerated in this section, the carrying of a concealed handgun may be disallowed in any place in the discretion of the person or entity exercising control over the physical location of such place by the placing of a written notice clearly readable at a distance of not less than ten feet (10') that the" carrying of a handgun is prohibited" at each entrance to the location.
 (B) If the location does not have a roadway entrance, there must be a written notice placed anywhere upon the premises except that there must be at least one (1) written notice posted within every three (3) acres of a location with no roadway entrance.
A.C.A. § 5-73-306(b)(1).[1]
I note that the language of the above quoted provision, granting the controllers of property the authority to prohibit the carrying of concealed handguns into the property over which they exercise control, is sufficiently broad to include any person or entity that exercises control over property — even governmental entities such as cities. Nevertheless, I recognize that it is not entirely clear that the General Assembly intended this provision to apply to non-private entities such as municipalities when it enacted the provision in 1995. Indeed, in 1995, it would not have been necessary to authorize cities to post signs to prohibit the carrying of weapons in city-controlled property, because the provisions of A.C.A. § 5-73-122 already prohibited the carrying of weapons into city-controlled property. Nevertheless, when the General Assembly enacted Act 1110 of 2003, it was not only presumed to have been aware of the broad language of A.C.A. § 5-73-306(b)(1), it also did not change that broad language. Moreover, because the General Assembly was impliedly repealing the portion of A.C.A. § 5-73-122 that had previously obviated the need to authorize cities to post prohibiting signs, it was simultaneously giving rise to such a need. Because of the nature of this series of developments in these laws, I believe that if a court were faced with the question, it would interpret A.C.A. § 5-73-306(b) to apply to cities.
I acknowledge that a question could arise as to whether municipalities have the authority to prohibit the carrying of handguns in municipal parks, in light of three separate provisions that limit the authority of municipalities. One such provision is A.C.A. § 14-54-1411, which states in pertinent part:
 (a) As used in this section, "local unit of government" means a city, town, or county.
 (b)(1)(A) A local unit of government shall not enact any ordinance or regulation pertaining to, or regulate in any other manner, the ownership, transfer, transportation, carrying, or possession of firearms, ammunition for firearms, or components of firearms, except as otherwise provided in state or federal law.
A.C.A. § 14-54-1411(a) and (b)(1)(A) (emphasis added).
In my opinion, the above-quoted provision does not operate to bar municipalities from acting to prohibit the carrying of concealed handguns in city parks. The exception language ("except as otherwise provided in state . . . law") clearly allows cities to regulate firearms in situations in which they have been authorized by state law to do so. As discussed above, I interpret the provisions of A.C.A. § 5-73-306(b)(1)(A) to authorize cities to prohibit the carrying of concealed handguns into the property over which they exercise control. The authorization stated in A.C.A. § 5-73-306(b)(1)(A) therefore falls within the exception language of A.C.A. § 14-54-1411(b)(1)(A), quoted above. For this reason, it is my opinion that A.C.A. § 14-54-1411 does not operate to bar cities from prohibiting the carrying of concealed weapons in city parks.[2]
Accordingly, I conclude that municipalities have the authority to prohibit persons who have concealed handgun permits from carrying concealed handguns into city parks, by the posting of signs, pursuant to A.C.A. § 5-73-306(b)(1).
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] It should be noted that this provision will not operate to prohibit persons who are not subject to the concealed weapons requirements, such as certified law enforcement officers, from carrying weapons into city parks. See, e.g., A.C.A. § 12-15-202(b)(3) as amended by Acts 2003, No. 348.
[2] Two other provisions might be argued to bar municipalities from enacting ordinances prohibiting the carrying of concealed handguns in city parks. One such provision is A.C.A. § 14-42-310, which states: "(c) No municipality shall pass any laws contrary to the criminal laws of the State of Arkansas." It could be argued that a city's prohibition of the carrying of handguns in city parks is contrary to the provisions of A.C.A. § 5-73-306, as amended by Act 1110 of 2003, which is a criminal law. I believe this argument would fail because a city's prohibition of handguns in city parks, rather than being contrary to A.C.A. § 5-73-306, is entirely consistent with and authorized by a specific section of that statute: A.C.A. § 5-73-306(b)(1)(A).
 The other provision that could be argued to bar municipalities from enacting ordinances prohibiting the carrying of concealed handguns in city parks is A.C.A. § 14-43-601, which delineates the "municipal affairs" over which cities of the first class may exercise control pursuant to A.C.A. § 14-43-602, and which distinguishes "municipal affairs" from "state affairs," over which municipalities may not exercise control. The statute states in pertinent part:
 (a)(1) For the purposes of this subchapter, the term "municipal affairs" means all matters and affairs of government germane to, affecting, or concerning the municipality or its government, except the following, which are state affairs and subject to the general laws of the State of Arkansas:
* * *
 (J) Matters coming within the police power of the state including minimum public health, pollution, and safety standards;
A.C.A. § 14-43-301(a)(1)(J). The Arkansas Supreme Court has held that the regulation of weapons is a matter within the police power of the state.See generally Jones v. State, 314 Ark. 383, 862 S.W.2d 273 (1993). It could be argued that because the regulation of weapons is a matter within the state's police power, it is therefore a matter over which the city is barred by A.C.A. § 14-43-301(a)(1)(J) from exercising control. Again, I believe that this argument would fail in light of the express grant of authority stated in A.C.A. § 5-73-306(b)(1)(A) to the controllers of property to prohibit the carrying of concealed weapons on their property. In this regard, I note that A.C.A. § 14-43-601(a)(2) expressly permits cities to legislate on state affairs, if they do so in a manner that does not conflict with state law.