HAZELRIGG *v.* BOARD OF PENITENTIARY COMMISSIONERS.

Opinion delivered July 13, 1931.

*Hal L. Norwood,* Attorney General, *Robert F. Smith* and *Walter L. Pope,* Assistants, for appellee.

SMITH, J. This appeal questions the right of the State, acting through the State Penitentiary Board, to issue bonds pursuant to act No. 208, approved March 26, 1931.

Section 1 of the act reads as follows: "Section 1. The board having charge of the State penitentiary is hereby empowered and authorized to execute in the name of the State of Arkansas coupon bonds of the State of Arkansas in the sum or sums of not to exceed six per cent. (6%) per annum, payable annually, said bonds to run for a period of not more than five (5) years, and to be so arranged that the annual payments may be sub-

stantially equal. The full faith and credit of the State of Arkansas is pledged for the payment of said bonds.''

Section 2 of the act provides that the proceeds of the bond sale shall be credited to a fund to be known as the emergency penitentiary fund.

Section 3 appropriates $200,000, or so much thereof as may be necessary, to be payable out of the emergency penitentiary fund, for the purpose of discharging certain outstanding obligations of the penitentiary commission.

It is insisted that the act does not fix any maximum limit upon the amount of bonds to be issued, indeed, does not specify any amount whatever, and is therefore so vague and indefinite that no authority to issue bonds in any amount has been conferred. On the other hand, it is insisted that, when the act is read in its entirety, it sufficiently and certainly appears that the obvious purpose of the General Assembly was to authorize a bond issue in a sum not to exceed $200,000, and the act should therefore be construed as conferring that power.

The courts of the country have been called upon many times to construe defective legislation, and their power in this behalf is well-defined. The annotated cases on the subject collect an almost innumerable number of cases, but it is unnecessary to review these cases, as the law of the subject has been frequently declared and is well settled by the decisions of this court.

It has been well said that it is not the province of the courts to be present at the making of the law. This is the function of another department of government, and the courts have the power only to construe an act as it comes from the hands of the lawmakers, in connection with other legislation *in pari materia. Snowden* v. *Thompson,* 106 Ark. 517, 153 S. W. 823; *Reynolds* v. *Holland,* 35 Ark. 56.

It is the duty of the courts to construe legislation as passed for the purpose of ascertaining the legislative intent, and to give effect thereto when the legislation is not inhibited by some constitutional restriction. But this

intention must be ascertained from the act under review and other legislation *in pari materia,* and the courts cannot legislate under the guise of construction. If the Legislature has not declared its will, the courts may not do so. But, while this is true, it is true also, as is said in Lewis' Sutherland Statutory Construction, vol. 2 (2d ed.), § 410, that "legislative enactments are not any more than any other writings to be defeated on account of mistakes, errors or omissions, provided the intention of the Legislature can be collected from the whole statute."

Another statement of the power and duty of the courts in this behalf appears in the chapter on Statutes, 25 R. C. L., page 975, where it is said: "But, while the courts cannot add to, take from or change the language of a statute to give effect to any supposed intention of the Legislature, words and phrases may be altered and supplied when that is necessary to obviate repugnancy and inconsistency and to give effect to the manifest intention of the Legislature. Especially will this be done when it is necessary to prevent a law from becoming a nullity."

The annotated cases cited in the note to the text quoted fully sustain the text. See also *Road Imp. Dist.* v. *Glover,* 89 Ark. 513, 117 S. W. 544; *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S. W. 656; *Snowden* v. *Thompson,* 106 Ark. 517, 153 S. W. 823; *State* v. *Trulock,* 109 Ark. 556, 160 S. W. 516; *McDaniel* v. *Ashworth,* 137 Ark. 280, 209 S. W. 646; *Summers* v. *Road Imp. Dist.,* 160 Ark. 371, 264 S. W. 696; *Gay Oil Co.* v. *State,* 170 Ark. 587, 280 S. W. 632; *Turner* v. *Edrington,* 170 Ark. 1155, 282 S. W. 1000; *Breashears* v. *Norman,* 176 Ark. 29, 2 S. W. (2d) 53; *Gill* v. *Saunders,* 182 Ark. 453, 31 S. W. (2d) 748.

Applying these principles to the act under construction, we have concluded that it is valid legislation and authorizes a bond issue in a sum not to exceed $200,000.

Obviously, it was the intention of the Legislature to authorize the board having charge of the State peni-

tentiary to issue bonds to discharge past-due obligations. This intention is so clearly expressed in the act that there can be no doubt upon that subject. It is also clear and certain that the proceeds of the bond sale were to be credited to a fund known as the emergency penitentiary fund, and out of this fund so created by the sale of the bonds $200,000, or so much thereof as was necessary to carry into effect the declared purpose of the act, was appropriated.

There appears to be no other provision of law relating to an emergency penitentiary fund and no other means to supply the money appropriated out of that fund except upon the sale of bonds. Bonds are to be sold under the authority of the act to supply the money appropriated, and no other source of supply exists, and we therefore conclude that the legislative intent, as deduced from the entire act, was to authorize a bond issue not exceeding $200,000 to supply the money appropriated, and, as the decree here appealed from was in accord with that view, it is affirmed.