**ARKANSAS STATE HIGHWAY COM-
MISSION v. BUTLER.**

No. 11325.

Circuit Court of Appeals, Eighth Circuit.
Aug. 1, 1939.

Rehearing Granted Sept. 16, 1939.

Walter L. Pope and Herrn Northcutt, both of Little Rock, Ark. (Jack Holt, Atty. Gen., on the brief), for appellant.

Harry B. Solmson, Jr., of Little Rock, Ark. (Joe W. House, of Little Rock, Ark., and Max F. Goldberg, of Chicago, Ill., on the brief), for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

The White & Black Rivers Bridge Company (the receiver of that company is the appellee) owns a franchise to operate a toll bridge in Arkansas over White River and another franchise to operate a toll bridge in Arkansas over Black River. The franchises were granted to the company's predecessors in title by the county courts of the two counties in which the bridges are located. The Arkansas State Highway Commission has purchased a ferry and ferry rights and has operated that ferry and proposes to continue to operate it as a free ferry over Black River, at a point called Spring Ferry, a short distance from the company's toll bridge over Black River. The Commission also has removed signs from the highway calling attention to the toll bridge over Black River and the advantages of its use and has erected other signs intended to direct traffic from the toll bridge and to the free ferry. The operation of the free ferry will certainly greatly lessen the value of the company's franchise to operate a toll bridge over Black River. The court below enjoined the operation by the Commission of the free ferry and enjoined also the maintenance of signs directing traffic away from the bridge. The prime question presented on the merits is: Does the maintenance and operation of the free ferry by the State Highway Commission infringe the company's franchise rights? There is, however, a preliminary question of jurisdiction.

1. It is contended by appellant—The Highway Commission—that the court below had no jurisdiction of the suit for a decree of injunction because it was in reality a suit against the state to which, perforce the Eleventh Amendment, the judicial power of the United States does not extend. The Highway Commission, so it is urged, when acquiring and operating a ferry on a state highway, is a mere agency of the state and is the state. And it must be admitted that if the Highway Commission in acquiring and operating the ferry here in question acted within lawful authority conferred upon it by the state, then it was acting as a state agency and was the state. But there are two questions to be answered before it can be said that the Commission had such lawful authority: (1) Did the Commission generally have authority to operate ferries as parts of state highways? (2) If it had general authority, was this

particular ferry excepted from that general authority?

We are convinced that the Commission had general authority to operate ferries on state highways. An Arkansas statute, Section 53, Act 65, page 326, of 1929, Section 6903, Pope's Digest, provides—"The State Highway Commission is hereby vested with all powers necessary to accomplish the purpose of this Act and is hereby specifically authorized to employ labor, buy or lease equipment, buy supplies and material, and to enter into any and all contracts necessary for the construction, reconstruction, and maintenance of state highways."

So the Commission, speaking generally, has authority to acquire and operate a ferry which is a part of any state highway as the ferry here was. But that general authority has this implied exception: the authority may not be so exercised as to violate constitutional rights. When constitutional rights are invaded by a given action, lawful authority for that action cannot be present. In a situation of that kind the acts of agents are not the acts of the state but of individuals, subject to injunctive restraint notwithstanding the Eleventh Amendment, U.S.C.A.Const. Greene v. Louisville & I. R. Co., 244 U.S. 499, 37 S. Ct. 673, 61 L.Ed. 1280, Ann.Cas.1917E, 88; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann. Cas. 764; Hopkins v. Clemson Agricultural College, 221 U.S. 636, 31 S.Ct. 654, 55 L. Ed. 890, 35 L.R.A.,N.S., 243; Looney v. Crane Co., 245 U.S. 178, 38 S.Ct. 85, 62 L. Ed. 230; Houston v. Ormes, 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667; Old Colony Trust Co. v. Seattle, 271 U.S. 426, 46 S.Ct. 552, 70 L.Ed. 1019; Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255; Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819; Cargile v. New York Trust Co., 8 Cir., 67 F.2d 585. So here, if the operation of the free ferry was a violation of the constitutional rights of appellee, it, and its incidents, may be restrained in a federal court. We turn then to a consideration of the merits.

2. We need consider the franchise to operate a toll-bridge over Black River only. In that franchise we need consider one paragraph only which is—"The said franchise to construct, maintain and operate said toll bridge shall be exclusive in the said Harry E. Bovay, his heirs, successors and assigns for the term of forty-nine years, for a distance of ten miles on each side of said bridge, measured along the channel of said river; and said county shall not thereafter, during the life of this franchise, grant to any other person, partnership, company, corporation or association, any rights, privilege, franchise or license to construct, maintain or operate another bridge or a ferry across Black River within the distance above mentioned except at Spring Ferry, nor shall the county within such time construct, maintain or operate a bridge or ferry across said river within said limits to the injury of the holders of the franchise granted herein, provided all ferries licensed by the county court may run until said bridge be opened for traffic."

But since the county court could only grant such a franchise as the Arkansas law authorized it to grant, we must consider what authority the law gave the county court and interpret the franchise undertaken to be granted in the light of that law, in effect removing from it any provisions which the law did not authorize.

The Arkansas law in force when the franchise here involved was granted, so far as it need now be considered, was embodied in two sections of the Arkansas statutes (Sections 10255 and 10258, C. & M. Digest) as follows:

"§ 10255. The several county courts, through whose counties runs any watercourse, lake, bay or swamp which may be too burthensome to bridge and keep in repair by the inhabitants thereof, are hereby fully and exclusively empowered to grant privileges to persons to build toll-bridges over, or turnpikes or causeways along the same, or through any overflowed or wet land, whenever the interest of the county or of the traveling public shall, in their discretion, demand such improvements."

"§ 10258. No county court, after conferring the privileges of this act upon any person, shall again have power to confer the same, or like privileges, upon any other person to the injury of him upon whom such privileges were first conferred."

If we consider these two sections in their texts alone, setting aside for the moment any decisions of the Arkansas Supreme Court construing them, it is clear that Section 10258 does not confer any power upon a county court to grant any exclusive privileges in a toll bridge franchise. The section assumes that a franchise has been granted as provided by Sec-

tion 10255 and declares that after it has been granted the county court shall not again have power "to confer the same, or like privileges" on another to the injury of the grantee. We must look, therefore, solely to Section 10255 to ascertain what were the franchise granting powers of the county court. And we perceive that the county court was empowered only to grant the privilege of building toll bridges, turnpikes and causeways. It was given no power to grant any exclusive privilege. But, of course, the two sections must be read together. When read together their effect is this: that any franchise granted by a county court under Section 10255 to build a toll bridge has implied in it the statutory obligation that the county court will not thereafter confer "the same, or like privileges" upon any other person to the injury of the grantee of the franchise. Returning now to the franchise actually sought to be granted by the county court, the franchise relied on in this case, we are constrained to the view that it exceeded the powers of the county court which granted it. No statute of Arkansas authorized the county court to agree, as it did agree in this franchise, that the franchise should be exclusive for a distance of ten miles on each side of the bridge to be constructed. The only exclusion provided for in the statutes was that "the same, or like privileges" should not be granted to other persons.

We are bound, of course, by the construction of any Arkansas statute by the Supreme Court of Arkansas. We have found no decisions of the Supreme Court of Arkansas which construe Section 10255, supra (the only section of the statutes of Arkansas purporting to confer any authority on county courts to grant franchises), as empowering the county courts to grant exclusive franchises of any character. We have found no decision which is inconsistent with the view we have expressed here, that is, that a toll bridge franchise is exclusive only to the extent it is made so by Section 10258.

What we really have here then is a franchise to Harry E. Bovay (whose rights have passed to appellee) authorizing him to build a toll bridge across Black River and to operate it for a period of forty-nine years, in which franchise is implied the statutory provision that "the same, or like privileges" shall not be conferred by the county court "upon any other person."

And the questions really presented are these: (1) Is the privilege of operating a ferry across Black River nine miles by river, two and a half miles in a straight line from the toll bridge, "the same or (a) like" privilege as the privilege of operating the authorized toll bridge? (2) In any event, is the operation of a free ferry by the State Highway Commission a violation of the statutory obligation that the county court shall not confer the same or a like privilege upon any other person?

Certainly it is the general rule that such a franchise as that which we have here is to be interpreted strictly in favor of the state. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 9 L.Ed. 773. It would not seem to be debatable that if the privilege of operating a toll bridge across a given river is granted to A, the granting to B of the privilege to operate a competing toll bridge or a competing ferry immediately adjacent to the toll bridge first authorized or so near thereto as to attract and serve the same patrons who would have used the toll bridge, would be the granting to B of a similar or like privilege as that which had been granted to A. Certainly the rule of strict construction is not to be so used as to defeat an obvious intent. We are not prepared to say that the granting by the county court of the privilege of operating a ferry (or the operating of a free ferry by the county court) at the point at which the free ferry is now being operated by the Highway Commission might not have been a violation of the franchise rights granted to appellee's predecessor.

But we are not able to perceive how it reasonably can be argued that the statutory provision which was a part of the franchise, the provision that the county court after granting the franchise would not confer the same or like privileges upon another, is violated by the action of the State Highway Commission in acquiring and operating a free ferry as a part of a state highway. To so construe the statute and the franchise of which it became a part certainly is to construe both, not most favorably to the state, but far more favorably to the grantee than any language either in the statute or the franchise warrants. Certainly it cannot be said that when the State Highway Commission acquires and operates a free ferry, a county court has conferred upon some individual a privilege identical with or like unto the privilege of building and maintaining a toll

bridge. Such a thesis only could be supported, it seems to us, by a great strain on and distortion of words. Is there any decision of the Supreme Court of Arkansas which requires that?

It may be said at once that no decision of the Supreme Court of Arkansas which has been cited to us or which we have found deals with any fact situation in which the State Highway Commission has acquired and operated either a free ferry in competition with a toll bridge or a free road in competition with a turnpike and tollgate. Two cases, however, have been cited with the contention that they are in point in principle. They are Ratcliffe v. Pulaski Turnpike Co., 69 Ark. 264, 63 S.W. 70, and White River Bridge Company v. Hurd, 159 Ark. 652, 655, 252 S.W. 917. Of these two the second adds nothing to the first.

The question involved in Ratcliffe v. Pulaski Turnpike Company was whether, when a county court had granted turnpike and tollgate privileges to a private company, the county court might thereafter authorize and build a competing public road which necessarily would divert traffic from the turnpike and tollgate. The Supreme Court ruled that—"The county court itself was forbidden, by the very terms of the act under which it undertook to have this turnpike constructed by the plaintiff, to open a competing road, or in any way to injure the plaintiff's franchise." [69 Ark. 264, 63 S.W. 80.] It is assumed that the reference of the Supreme Court, when it spoke of "the very terms of the act," was to Section 10258, although that section is not expressly specified. While we would hesitate to give any such broad meaning to Section 10258, we must accept the construction placed upon it by the Supreme Court. We must say that when a county court has granted turnpike and tollgate privileges or toll bridge privileges, not only cannot the county court itself thereafter grant the same or like privileges to another, but it cannot itself compete by a free road or a free bridge or a free ferry with the persons or corporations to which the privileges have been granted. Certainly, however, it is a far cry from such an interpretation of Section 10258, broad as it is, to the interpretation now urged by appellee. Because a county court may not operate a free ferry in competition with a toll bridge, it does not at all follow that the state, or the State Highway Commission for the state, may not acquire and operate a free ferry.

It is quite true that the two cases cited supra hold that in granting turnpike and toll bridge privileges "the county court is but an agency of the state government." But what follows from that doctrine? Only this, that when the county court grants a toll bridge franchise it is as if the franchise had been granted by the state. The franchise granted still is to be construed in accordance with its language, in so far as it is within statutory authority, and in accordance with the language of the statutes impliedly embodied in it. When that principle is given full application, what we have is this: the state (the county court acting as the agency of the state) granted a toll bridge franchise and agreed with the grantee that he should have the benefit of Section 10258, that is, that no county court thereafter would undertake to give a similar or like provision to another. It cannot reasonably be argued and the Supreme Court of Arkansas never has ruled that when the Arkansas legislature provided in Section 10258 that no county court, after once granting a toll bridge franchise, should again confer the same or a like privilege upon another, it meant that the State of Arkansas not only might not confer such a privilege on another, but also that the State of Arkansas might not itself thereafter build a state highway parallel with and nearby the county road on which was the toll bridge. And if the state could build a highway it could certainly make it usable by bridging a river which it crossed or by operating a ferry over the river. Every presumption is against an intention to surrender the sovereign powers of the state beyond such a surrender of those powers as a contract with the citizen clearly indicates.

2. So far we have considered the franchise in the light of the statutory authority vested in the county court. If we consider it without any such limitation it would still appear that there has been no breach of the franchise obligation. There was an express reservation in the agreement of the county court not to grant to any other person the privilege of constructing, maintaining or operating a ferry across Black River within the distance of ten miles on each side of the bridge, a reservation to the effect that it might grant the privilege of building a bridge or operating a ferry "at Spring Ferry." (Of course this

reservation was violative of Section 10258 and was, therefore, void, if a ferry at Spring Ferry was a privilege the same as or like to that which had been granted in the franchise, but we are considering the franchise now granted and not the statute.)

In other words, the county court reserved the right to grant to any other person the right to build a bridge or to operate a ferry at Spring Ferry. The free ferry, the operation of which has been enjoined, is at Spring Ferry. Under the reservation the county court might have authorized any person either to build a toll bridge at Spring Ferry or to operate a ferry at Spring Ferry. Could not the person who was given the right to build a toll bridge at Spring Ferry, or to operate a ferry at Spring Ferry, have sold his rights to any purchaser upon any terms satisfactory to himself? It seems evident to us that he could have done so. He could have sold the toll bridge to the county or to the state and the county or state might have operated the bridge as a free bridge had it so desired. If he had been granted the right to operate a ferry at Spring Ferry he could have sold that right to the county or the state and the county or the state could have operated it as a free ferry if it so desired. (Would it be doubted that the owner of the toll bridge here involved over Black River could not sell that bridge to the state and that the state could not thereafter operate it as a free bridge if it desired?) That is exactly what was done. The State Highway Commission bought the authorized ferry at Spring Ferry upon terms and conditions apparently satisfactory to the vendor and certainly, like any other purchaser, it may operate the ferry either as a free ferry or with such toll charges as it may choose to collect.

3. For the reasons we have stated we believe that the action of the State Highway Commission in acquiring and operating the free ferry over Black River at the point known as Spring Ferry violated none of appellee's constitutional rights and that the learned trial judge erred in enjoining the operation of the ferry and such incidental matters as the erection of highway signs calling attention to the ferry.

The decree also enjoined the State Highway Commission from operating a ferry over White River for a distance of 15 miles in each direction from appellee's toll bridge over that river. While the matter of a ferry over White River was not discussed at the oral argument nor is it discussed in the briefs submitted, it seems to us that the same principle governs there as governs in the case of the Black River ferry. Accordingly, the decree of the district court, in so far as it enjoins the State Highway Commission from operating ferries and erecting signs and in so far as it prohibits the institution of condemnation proceedings in the state courts of Arkansas, is reversed.