Edwin HENDERSON et al *v.*
Herbert B. RUSSELL et al

79-232                                    589 S.W. 2d 565

Opinion delivered November 13, 1979
(In Banc)

*Hixson & Cleveland,* by: *R. H. "Buddy" Hixson,* for appellants.

*Witt & Donovan,* for appellees.

JOHN I. PURTLE, Justice. This case arises from the Logan County (Northern District) Circuit Court's holding that an ordinance by the quorum court prohibiting nepotism by elected county officials was a valid and properly adopted

ordinance. The trial court reviewed the case on a petition for writ of certiorari.

Appellant challenges the trial court's decision on grounds that the quorum court had no authority to pass the ordinance; that it was not passed or published according to law; and that the emergency clause was ineffective. We hold the trial court was correct on all alleged errors, except the emergency clause.

Five or six days prior to its meeting on December 11, 1978, the county clerk mailed the members of the quorum court an agenda which stated nepotism was a matter to be considered. The quorum court had previously passed Ordinance No. 15 on the same subject. At the meeting on December 11, 1978, the quorum court adopted Ordinance No. 20 which was the same as Ordinance No. 15 except for a change in the title and repealing clause. The journal of the proceedings of the Logan County Quorum Court reflects Ordinance No. 20 was called for discussion and one member moved to suspend the rules and place Ordinance No. 20 on the calendar for action on that date. The motion was seconded and the vote to suspend the rules was unanimous. The ordinance was then read for the first time upon motion and second. The rules were suspended for a second and third reading of the ordinance, and it was then passed unanimously. The emergency clause was read only one time before the vote, and it passed unanimously. This session of the quorum court was on a Monday night and the first publication was made in the local weekly newspaper on December 18, 1978. Both the ordinance and the proof of publication were included in the record. The ordinance did not have the word "title" written on it, but it did contain a title. The questioned ordinance had these words following the title: "BE IT ORDAINED BY THE LOGAN COUNTY QUORUM COURT." The county judge approved the ordinance on December 14, 1978.

The case was submitted to the court on stipulation of the facts and briefs. The trial court determined the quorum court had subject matter jurisdiction, and the ordinance was passed and published according to law.

Amendment No. 55 to the Constitution of the State of Arkansas states:

§ 1. Power of quorum court. — (a) A county acting through its Quorum Court may exercise local legislative authority not denied by the Constitution or by law.

Ark. Stat. Ann. § 17-3801 (Supp. 1979) states:

As provided by Amendment No. 55, Section 1, (a) of the Arkansas Constitution, a county government acting through its Quorum Court may exercise local legislative authority not expressly prohibited by the Constitution or by law for the affairs of the county . . .

We do not find any provision in the constitution nor any law enacted by the General Assembly to prohibit a quorum court from enacting nepotism statutes or ordinances. Therefore, we hold the quorum court had the authority to approve this legislation.

Appellants contend the ordinance was not properly passed nor published according to law. Ark. Stat. Ann. § 17-4003 (Supp. 1977) states:

\* \* \*

(2) Style Requirements of Ordinances and Amendments to Existing Ordinances. (a) General Provisions. No ordinance or amendment to an existing ordinance passed by a Quorum Court shall contain more than one (1) comprehensive topic; and shall be styled[:] 'Be it Enacted by the Quorum Court of the County of        , State of Arkansas; an Ordinance to be Entitled:'. Each ordinance shall contain such comprehensive title and the body of such ordinance shall be divided into articles, sequentially numbered, each expressing a single general topic related to the single comprehensive topic.

Ark. Stat. Ann. § 17-4005 (Supp. 1977) states:

(1) Defined. An emergency ordinance or emergency

amendments to existing ordinances may be introduced in the manner provided by law for the introduction of ordinances. An emergency ordinance may be enacted only to meet public emergencies affecting life, health, safety, or the property of people.

(2) * * *

(3) Declaration of Emergency. An emergency ordinance must contain a declaration that an emergency exists and define the emergency. All emergency ordinances shall be designated 'Emergency Ordinance.'

(4) Readings and Publication. An emergency measure does not require separate readings or publication prior to passage; provided, however, that publication shall be initiated within two (2) calendar days, excepting holidays, after approval of the emergency measure by the County Judge.

* * *

From the above statutes it can be seen the conflict arises by the fact that the ordinance in question stated "Be it Ordained by the Logan County Quorum Court." Thus it contained the word "ordained" rather than the statutorily prescribed word "enacted." The word "ordain," as defined by Webster's New World Dictionary, means to "appoint; decree; establish; enact." The same dictionary defines the word "enact" to mean "to make into law; pass (a law); decree; ordain." Thus we have the word "enact" to mean ordain and the word "ordain" to mean enact. No one could be misled by the use of the word "ordain" in place of "enact." We must then consider whether such technicality voids the ordinance. We have long held that statutory construction requires a common sense approach. *Dozier* v. *Ragsdale,* 186 Ark. 654, 55 S.W. 2d 779 (1932). When the General Assembly uses words which have a fixed and well-known signification, they are presumed to have been used in that sense. *State* v. *Jones,* 91 Ark. 5, 120 S.W. 154 (1919). The rule of strict construction will not be used to defeat the obvious intent of the General Assembly. *Ark. State Highway Commission* v. *Butler,* 105 F. 2d 732 (1939). The pri-

mary rule in construing a statute is to ascertain and give effect to the intent of the General Assembly and this intent is obtained by considering the entire act. *Perry Co.* v. *House,* 196 Ark. 317, 117 S.W. 2d 342 (1938). If the language is ambiguous, we consider the subject matter of the act, object to be accomplished, purpose to be served, as well as the remedy and consequence. *Holt* v. *Howard,* 206 Ark. 337, 175 S.W. 2d 384 (1943).

We have held that substantial compliance with publication requirements is sufficient as it relates to Initiative and Referendum amendments. *Johnson* v. *Munger,* 260 Ark. 613, 542 S.W. 2d 753 (1976). A liberal construction is accorded an act in order to effectuate its purpose. *Leigh* v. *Hall,* 232 Ark. 558, 339 S.W. 2d 104 (1960). In *Leigh,* we further held substantial compliance with the law was sufficient to validate an election. We also adhered to the rule of substantial compliance in *Vinsant* v. *Knox,* 27 Ark. 266, (1871); *Trussell* v. *Fish,* 202 Ark. 956, 154 S.W. 2d 587 (1941); and *Cain* v. *McGregor,* 182 Ark. 633, 32 S.W. 2d 319 (1930), where we stated: ''The whole proceeding is statutory, and the statute must be substantially followed in all proceedings.'' Further, there is a presumption that the law was followed, and it is incumbent upon those attacking the validity of a statute to show its invalidity. *Wilson* v. *Luck,* 201 Ark. 594, 146 S.W. 2d 696 (1941).

In *State ex rel Attorney General* v. *Chicago Mill & Lbr.,* 184 Ark. 1011, 45 S.W. 2d (1941), and *Cooper* v. *Town of Greenwood,* 195 Ark. 26, 111 S.W. 2d 452 (1936), we stated:

> It is a well-settled principle of statutory construction that statutes will receive a common sense construction, and, where one word has been erroneously used for another, or word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied. This is but making the strict letter of the statute yield to the obvious intent of the legislature.

Statutes will not be defeated on account of mistakes, errors

or omissions, provided the intent of the General Assembly can be collected from the whole statute. *Hazelrigg* v. *Board of Penitentiary Commissioners,* 184 Ark. 154, 40 S.W. 2d 998 (1931). We have often held that the title of an act is not controlling in its construction even though it is a matter to be considered in determining the meaning of a statute which is otherwise ambiguous. *Matthews* v. *Byrd,* 187 Ark. 458, 60 S.W. 2d 909 (1933). Likewise, the language used in the title of an act is not controlling but may play a part in explaining ambiguities in the body of the statute. *City of Conway* v. *Summers,* 176 Ark. 796, 4 S.W. 2d 19 (1928). We examine the title of an act only for the purpose of shedding light on the intent of the General Assembly. *Lyerley* v. *Manila School District No. 15,* 214 Ark. 245, 215 S.W. 2d 733 (1948).

Ark. Stat. Ann. § 17-4005 (4) (Supp. 1977) provides:

Readings and Publications (Publication). An emergency measure does not require separate readings or publications prior to passage; provided, however, that publication shall be initiated within two (2) calendar days, excepting holidays, after approval of the emergency measure by the county judge.

The above statute requires such ordinances to be published and states the publication shall be initiated within two (2) days (now seven (7) days) after approval by the county judge. The approval by the county judge was on Thursday, December 14, 1978, and it was published in the next issue of the local weekly newspaper. This publication was on Monday, December 18, 1978. With Saturday and Sunday deleted the publication was at least initiated within two (2) days as contemplated by the General Assembly.

Ark. Stat. Ann. § 17-4005(3) (Supp. 1979) states:

Declaration of Emergency. An emergency ordinance must contain a declaration that an emergency exists and define the emergency. All emergency ordinances shall be designated "Emergency Ordinance."

Since the statute requires an emergency to be defined,

we now examine the present ordinance to determine whether an emergency is defined. Section 4 of the ordinance states:

> Whereas. County Officers must have Deputies and employees necessary to carry out the essential activities of County Government, it is hereby found that it is in the best interest of County Government that no person be employed as a Deputy or County Employee who is related by affinity or consanguinity within the third degree to any elected official. Therefore, an emergency is hereby declared to exist and this Ordinance being necessary for the immediate preservation of public peace, health and safety shall be in full force and effect from and after its passage and approval.

We cannot find an emergency defined in the above quotation. It has been a fact for more than 100 years that county officers have used deputies to assist in carrying out their work. Also, during this same time many deputies have been related to the office holder within the third degree of affinity or consanguinity. These facts are very similar to those stated in *Gentry* v. *Harrison,* 194 Ark. 916, 110 S.W. 2d 497 (1937), wherein we declared the emergency clause was ineffective. In the *Gentry* case the emergency clause stated that it was a function of the state government to regulate insurance. That was the emergency relied upon and we held it did not state facts sufficient to constitute an emergency. We do not think that fair-minded and intelligent men might reasonably differ in their interpretation of whether an emergency was stated in the emergency clause of Ordinance No. 20. There simply is nothing in the emergency clause to indicate a real emergency existed. We declare that the emergency clause has failed and the ordinance will take effect as it would have had there been no emergency clause.

Affirmed as modified.

HARRIS, C.J., not participating.

FOGLEMAN and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. If the style require-

ments for enactment of county ordinances, Acts 1977, No. 742, Ch. 5 § 86 [Ark. Stat. Ann. § 17-4003 (Supp. 1977)] could be read in isolation and without regard to other provisions of "The Arkansas County Government Code," I would not bother to enter a written disagreement with the majority's assertion that the nepotism ordinance by using "Be it ordained" was a substantial compliance with the style requirement of "Be it enacted." A look at the authorities generally would support the majority view — *i.e. In re Senate File 31*, 25 Neb. 864 (1889), the term "Be it enacted" was held to be equivalent to "Be it resolved"; *Smith* v. *Jennings*, 67 S.C. 324, 45 S.W. 821 (1903), "Be it resolved" was held to be a substantial compliance with a mandatory constitutional requirement of "Be it enacted"; *State ex rel* v. *Dalles City*, 72 Or. 337 (1914), the terms "Be it enacted," "Be it resolved," and "Be it ordained" were held to be synonymous. In *City of Ft. Smith* v. *Taylor*, 228 Ark. 722, 310 S.W. 2d 13 (1958), we held there was no difference in the legal effect of a resolution and an ordinance.

Presumably those who drafted "The Arkansas County Government Code" Acts 1977 No. 742 [Ark. Stat. Ann. §§ 17-3101 through 17-4208 (Supp. 1977) had access to the foregoing authorities from other states and the decisions of this court and if the General Assembly wanted to make a distinction between resolutions and ordinances, it has the authority to do so. Now to understand my disagreement with the majority's substantial compliance view, it is necessary that the following pertinent portions of "The Arkansas County Government Code," Acts 1977 No. 742, be set forth as follows:

"Ch. 1, § 1 [Ark. Stat. Ann. § 17-3101 (Supp. 1977)]. This Act constitutes the Arkansas County Government Code.

Ch. 1, § 2(1) [Ark. Stat. Ann. § 17-3102(1) (Supp. 1977)]. Except when a specific definition is given or a technical interpretation is required, words and phrases used in this title shall be construed according to their ordinary usage in the English language.

Ch. 5, § 84 [Ark. Stat. Ann. § 17-4001 (Supp. 1977)]. LEGISLATIVE AUTHORITY. — The Legislative power of county government is vested in the Quorum Court of each of the several counties of the State subject to the limitations imposed by the Constitution and by State law.

Ch. 5 § 85 [Ark. Stat. Ann. § 17-4002 (Supp. 1977)]. COUNTY LEGISLATIVE PROCEDURE. —

. . .

(7) Legislative Affairs. All legislative affairs of a Quorum Court shall be conducted through the passage of ordinances, resolutions, or motions.

. . .

(9) County Ordinance. A county ordinance is hereby defined as an enactment of compulsory law for a Quorum Court which defines and establishes the permanent or temporary organization and system of principals of a county government for the control and conduct of county affairs.

(10) County Resolution. A county resolution is hereby defined as the adoption of a formal statement of policy by a Quorum Court, the subject matter of which would not properly constitute an ordinance. A resolution may be used whenever the Quorum Court wishes merely to express an opinion as to some matter of county affairs and such resolution shall not serve to compel executive action.

(11) Motion. A motion is hereby defined as a proposal to take certain action or an expression of views held by the Quorum Court body; and, as such, a motion is merely a parliamentary procedure which precedes the adoption of resolutions or ordinances. Motions shall not serve to compel any executive action unless such action is provided for by a previously adopted ordinance or state law.

(12) Ordinances may be amended and repealed only by ordinances.

(13) Resolutions may be amended and repealed only by resolutions.

(14) All ordinances shall be subject to initiative and referendum as provided for through Amendment Number 7 to the Arkansas Constitution.

Ch. 5, § 86 [Ark. Stat. Ann. § 17-4003 (Supp. 1977)]. COUNTY ORDINANCE PROCEDURES — ADOPTION AND AMENDMENT. —

. . .

(2) Style requirements of Ordinances and Amendments to Existing Ordinances.

(a) General Provisions. No ordinance or amendment to an existing ordinance passed by a Quorum Court shall contain more than one (1) comprehensive topic; and shall be styled [:] 'Be it Enacted by the Quorum Court of the County of _____, State of Arkansas; an Ordinance to be Entitled:' Each ordinance shall contain such comprehensive title and the body of such ordinance shall be divided into articles sequentially numbered, each expressing a single general topic related to the single comprehensive topic.

. . .

(4) Approval and Publication of Ordinances and Amendments. Upon passage all ordinances . . . shall be approved by the County Judge . . . Such ordinances or amendments shall be published by the County Clerk as prescribed by law.

Ch. 5, § 93 [Ark. Stat. Ann. § 17-4010 (Supp. 1977)].

RESOLUTIONS — ADOPTION and AMEND-MENT. —

. . .

(2) Style requirements of Resolutions. General Provisions. No resolution or amendment to a resolution passed by a Quorum Court shall contain more than one (1) comprehensive topic; and shall be styled 'Be it Resolved by the Quorum Court of the County of        , State of Arkansas That:'.

. . .

(4) Majority Vote Required. A proposed resolution must be read and adopted by a majority vote of the whole number of Justices comprising a Quorum Court . . .

(5) Resolutions or an amendment to an existing resolution may be introduced and adopted in a single meeting of the Quorum Court.

(6) Upon passage, all resolutions or amendments to existing resolutions shall be entered into the records of the Quorum Court. Publications of resolutions shall not be required except where publication is specified in such resolution adopted by a Quorum Court.

. . .

(8) The power of veto shall not apply to the adoption of resolutions or amendments to resolutions.''

To understand what the majority is calling a substantial compliance with the style requirements of *The Arkansas County Government Code* for enactment of an ordinance it is necessary to look at the "alleged" nepotism ordinance which provides:

"AN ORDINANCE PROHIBITING ALL

ELECTED COUNTY OFFICIALS OF LOGAN COUNTY FROM EMPLOYING DEPUTIES AND COUNTY EMPLOYEES WHO ARE RELATED BY AFFINITY OR CONSANGUINITY WITHIN THE THIRD DEGREE TO ANY ELECTED COUNTY OFFICIAL; TO REPEAL ORDINANCE NO. 15 AND FOR OTHER PURPOSES.

BE IT ORDAINED BY THE LOGAN COUNTY QUORUM COURT:

## SECTION 1.

That Ordinance No. 15 is hereby repealed.

## SECTION 2.

That all elected County Officials of Logan County are hereby prohibited from employing Deputies or County Employees who are related by affinity or consanguinity within the third degree to any elected County Official.

## SECTION 3.

Provided, however, this Ordinance shall not prohibit the continued employment of any County Employee or Deputy who is presently serving as a County Employee or Deputy for the remainder of the present term of office.

## SECTION 4.

Whereas: County Officers must have Deputies and employees necessary to carry out the essential activities of County Government, it is hereby found that it is in the best interest of County Government that no person be employed as a Deputy or County Employee who is related by affinity or consanguinity within the third degree to any elected official. Therefore, an emergency is hereby declared to exist and this Ordinance being necessary for the immediate preservation of the public

peace, health and safety shall be in full force and effect from and after its passage and approval.

APPROVED:

BUSTER J. TRITT,
County Judge

DATED:
12-14-1975

ATTEST:
Penn S. Smith,
County Clerk

The first obvious defect in style is that the title precedes the enactment clause. The second obvious defect is that the Enactment Clause starts "Be it ordained" instead of "Be it enacted" as required by Acts 1977 No. 742 Ch. 5 § 86(2) [Ark. Stat. Ann. § 17-4003(2) (Supp. 1977)], *supra.* The third defect in the Enactment Clause is that it does not mention "State of Arkansas." After all, the authority for the Quorum Court of the County of Logan to enact any law depends upon the authority given it by the State of Arkansas, yet there is no mention of such authority in the Enactment Clause.

As can be seen from the provisions of *The Arkansas County Government Code, supra,* the General Assembly has gone to great lengths to make a distinction between ordinances and resolutions and has given clear and simple style requirements by which the members of the Quorum Courts and the public can easily distinguish between ordinances and resolutions. However if the majority's "substantial compliance" theory is carried to its logical extension, the businessmen in this State can expect to find legal notices that look like the following:

"Sunday Closing of Business

Be it Resolved by the Quorum Court of the County of White

1. That it is unlawful for any wholesale or retail establishment to remain open on Sundays during the hours of 8:00 A.M. and 5:00 P.M.

APPROVED
John Doe

Date 10-18-79
Attest: Richard Roe
County Clerk''

When the businessman contacts the members of the Quorum Court, he is told that they only passed a resolution that the County Judge approved because of his religious beliefs, but the sheriff and the prosecuting attorney by pointing to our construction of the terms "Be it enacted," "Be it ordained," "Be it resolved" as synonymous can take the position that the Quorum Court passed an ordinance. When the businessmen complain to their State Legislators, the State Legislators can truthfully state that they provided a simple and easy method to distinguish between what constituted an ordinance and a resolution and that it was the Arkansas Supreme Court that created the confusion. I must say that I have always considered it the duty of this Court to give a clear interpretation of the law, — *i.e.* it has the duty of not adding confusion to the law.

Needless to say, I do not think that the "alleged" nepotism ordinance sufficiently complied with the required enactment clause to be valid.

For the reasons stated, I respectfully dissent.

Fogleman, J., joins in this dissent except for that part pertaining to the use of the words "Be it ordained" rather than "Be it Enacted."