## Luther HALL *v.* STATE of Arkansas

CR 81-130 634 S.W.2d 115

### Supreme Court of Arkansas
### Opinion delivered June 1, 1982
[Rehearing denied June 28, 1982.]

 

*Robert A. Newcomb,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. On June 16, 1980, Luther Hall acted as a lookout while his two accomplices killed Leonard Jones and Carl Jackson by shooting them repeatedly while they were tied up in the trunk of a car. After that the three men decided to rob Rosemary Bogard and killed her in the course of that felony.

Hall was first tried separately for the capital murder of Jones and Jackson, was found guilty, and was sentenced to life imprisonment without parole, the State having waived the death penalty. About 70 days later Hall was tried for the capital felony murder of Rosemary Bogard, was found guilty of second degree murder, and was sentenced as an habitual criminal to 30 years' imprisonment, to run consecutively to the life sentence. The first case was appealed to this court. The second case was transferred to us and consolidated with the first one, because related issues with regard to Hall's confession are involved. Four points for reversal are presented.

First, it is argued that Hall's confession should have been excluded as having been involuntary. Hall was arrested on a warrant one Friday morning and after having been warned of his rights was interrogated for some time, but he made no statement. He was not questioned on Saturday or Sunday. On Monday morning he was taken before the municipal court, where the judge again explained his rights and explained the charges and the right to appointed counsel. Hall said that he would retain his own counsel. Upon being returned to the jail Hall said he wanted to make a statement, apparently to give his side of the occurrences as opposed to that of the other two suspects. After being informed of his rights for still a third time Hall made a detailed confession, which was tape recorded. The statement

covered both criminal episodes, but only that part relating to the killing of Jones and Jackson was eventually read to the jury at the first trial.

The voluntariness of the confession turned almost entirely upon matters of credibility. No physical mistreatment of any kind is alleged, but there were conflicts in the testimony about whether Hall was allowed to make telephone calls or was promised leniency. Having given due weight to the trial judge's advantageous position in the resolution of such conflicts, we cannot say his decision was clearly erroneous. *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981).

Second, at the close of the State's proof defense counsel moved for a directed verdict because of a supposed fatal variance between the information and the proof, in that the information charged that the defendants, with the purpose of causing the death of "another" person (instead of "any" person, as the statute reads, Ark. Stat. Ann. § 41-1501 [c] [Repl. 1977]), caused the death of Jones and Jackson. The trivial variance in wording had no prejudicial effect whatever upon Hall's substantial rights and does not call for serious discussion. For more than a century it has been the state's policy to disregard such defects. Ark. Stat. Ann. § 43-1012 (Repl. 1977).

Third, since the decision in *Jackson* v. *Denno*, 378 U.S. 368 (1964), the trial judge determines the voluntariness of a confession after an in-chambers hearing and is not required to resubmit that issue to the jury. *Walker* v. *State*, 253 Ark. 676, 488 S.W.2d 40 (1972); *Brown* v. *State*, 239 Ark. 909, 395 S.W.2d 344 (1965), cert. denied 384 U.S. 1016 (1966). Consequently, as explained in AMCI 200, Comment, the Arkansas model criminal jury instructions do not include an instruction with respect to confessions, because the weight and credibility of the testimony are matters to be argued by counsel.

Nevertheless, the trial judge is free to submit the issue of voluntariness to the jury if he thinks it to be appropriate. Here the trial judge said he was submitting the issue because

he was asked to do so by the prosecution and by the defense. As between the two instructions that were offered, he gave the State's instruction after modifying it to include an explanation that the presumption that an in-custody confession is involuntary must be overcome by the State by a preponderance of the evidence.

The two tendered instructions were substantially similar, but it is argued that the State's instruction, given by the court, was defective in two respects: First, it did not specifically refer to a promise of leniency. It did, however, refer to any promise or favor, which was certainly sufficient to enable counsel to argue the matter to the jury. Second, it did not tell the jury that the requirement of voluntariness is based upon the constitutional privilege against self-incrimination. We find it impossible to believe that the inclusion of such an abstract statement of the source of law would have had any effect upon the jury's deliberations.

Fourth, even though the same confession was introduced in both cases after the trial judge had determined its voluntariness at a *Denno* hearing preceding the first trial, it is insisted that he should have conducted a second *Denno* hearing at the second trial for a second determination of the same question. In denying the motion for another hearing the trial judge said: "Apparently from what I'm told there would be no difference in the testimony, there would be no new evidence, no new witnesses, and it would simply be an exercise in futility — really an endurance contest — to hear the same thing I've spent a day listening to already. . . . I'm going to order that a transcript of the Denno hearing held in the previous case . . . be made a part of the record in this case."

We find no abuse of the trial court's discretion. The first *Denno* hearing had consumed almost a day. Fourteen witnesses, including a police officer from another county, had testified. If defense counsel had any new matter to offer, witnesses could have been called to supplement the original proof. No such offer was made. Following our practice of giving a commonsense interpretation to statutes, we cannot construe the pertinent statute as mandatory in the circum-

stances now presented. Ark. Stat. Ann. § 43-2105; and see *Henderson* v. *Russell,* 267 Ark. 140, 589 S.W.2d 565 (1979); *Ark. State Hwy. Commn.* v. *Mabry,* 229 Ark. 261, 315 S.W. 2d 900 (1958).

We discern no prejudicial error in the various other objections and rulings that have been brought to our attention.

Affirmed.

ADKISSON, C.J., and PURTLE, J., dissent.

JOHN I. PURTLE, Justice, dissenting. I dissent from the majority opinion only as to the admission of appellant's statement into evidence. It is a fundamental principle that a custodial statement is considered involuntary and the state has the burden of proving it was voluntarily, knowingly and intelligently made after the accused has been informed of his constitutional rights.

In the present case the appellant states, and the record shows, that he was apprehended on a Friday morning and held in either the maximum security section of the jail or in the interview room until the following Monday morning. He alleged he was denied the right to make a telephone call during these three or four days. In the ordinary course of business the Pulaski County jail keeps a record which would show whether appellant was allowed to make a telephone call and where he was kept during the time he was in custody. Unfortunately, the Pulaski County jail's records for the critical days were missing at the time of trial on June 15, 1981. Mr. Ron Routh, the jail administrator, had said that the records for the maximum security section of the jail had existed as late as April of 1981. The missing records would have clearly established the testimony of one side or the other.

Appellant further stated he was promised that the number of charges would be reduced if he gave a statement. He gave a statement and some charges were dropped.

Under the circumstances I do not believe the confession was voluntary.

ADKISSON, C.J., joins in this dissent.