The Honorable George Hopkins State Senator 78 Harver Hills Malvern, Arkansas 72104
Dear Senator Hopkins:
This is in response to your request for an opinion on the proper interpretation of Act 1178 of 1997 (Section 2). You note that this provision authorizes the Forestry Commission to settle boundary disputes between overlapping fire districts. Your question is as follows:
 Does the above also apply to boundary disputes between non-profit corporations providing fire services and established fire districts that have already been assessed through the assessors office on boundaries approved by the County Quorum Court?
It is my opinion, although the issue is unclear, that the answer to your questions is "yes."
The relevant provision, now codified at A.C.A. § 14-284-125 (Repl. 1998), provides as follows:
 The State Forestry Commission shall have authority to adjust the boundaries of fire protection districts having overlapping boundaries. The commission shall adjust the boundaries of overlapping fire districts upon the request of either district. The commission shall adjust the boundaries so that each district receives approximately fifty percent (50%) of the area that is within the boundaries of both districts.
It is my understanding that your question has reference to a disputed boundary between the "Glen Rose Fire Protection District," recently formed under A.C.A. § 14-284-203(1)[1] and the Poyen Volunteer Fire Department, which is a nonprofit corporation. The Forestry Commission made a decision to adjust the boundary between these two entities.
Your question involves a construction of the term "fire protection districts" or "fire districts" as used in the statute above. The State Forestry Commission has authority to adjust the boundaries of "fire protection districts." Your question is whether this language is broad enough to cover a boundary dispute between a private nonprofit corporation which provides fire protection and an established "fire district," the assessments of which are processed through the county assessors office and which are collected with property taxes.
As noted in Op. Att'y Gen. 96-114 (and quoted in Op. Att'y Gen. 97-377), there are a number of ways fire protection entities are organized under state law.
 Such departments may be incorporated as purely private nonprofit corporations collecting dues or membership fees; as fire protection districts under A.C.A. §§ 14-284-101 et seq. or 14-284-201 et seq., or suburban fire improvement districts under A.C.A. § 14-92-201 et seq., all of which assess local benefits to be collected with ad valorem taxes; as a county `volunteer fire department' under A.C.A. § 14-20-108(c) or as a county created subordinate service district under A.C.A. §§ 14-13-708 and -709 (1987). [Or such departments may be organized as municipal fire departments under A.C.A. § 14-53-101.]
 The first type mentioned is created as is any other nonprofit corporation, and the improvement districts, as a general matter, are created by a petition process and ultimately approved by the county court (county judge).[2]
Op. Att'y Gen. 97-377, quoting Op. Att'y Gen. 96-114.
The term "fire protection district," in a legal sense, ordinarily refers to a type of improvement district created under A.C.A. § 14-284-101 etseq., or 14-284-201 et seq. These two subchapters are entitled "Fire Protection Districts" and "Fire Protection Districts Outside of Cities and Towns," respectively. The boundaries of such entities are fixed in the petition to form the district. See A.C.A. §§ 14-284-103(a) and14-284-206. These districts collect amounts which are either assessed as benefits against property within the district, or levied as flat fees on property within the district, both of which are collected with property taxes. See A.C.A. § 14-284-108; § 14-284-212; § 14-284-212(g); §14-284-112; §§ 14-284-215—216. The assessment or fee, once levied, either creates a lien upon the real property until paid (A.C.A. §14-284-111(b)(1)), or may be enforced by suit in chancery court (A.C.A. § 14-284-216).
The nonprofit entities to which you refer are variously referred to as "nonprofit fire protection corporations" (see, e.g., Acts 1991, No. 801
§ 5), or simply as "volunteer fire departments" or "rural fire departments." They are simply created under the general state law authorizing the creation of all types of nonprofit corporations.
The question for resolution is whether, in the enactment ofAct 1178 of 1997, Section 2, the legislature intended to use the term "fire protection districts" in its technical legal sense, (meaning a particular kind of improvement district) or whether the term was used in its general sense, merely referring to fire protection entities, areas or "districts." I can glean no satisfying evidence of legislative intention on this point from a reading of the statute or other provisions of the act. It is a rule of general statutory construction that the courts will assume that the legislature employed words of a statute in their most usual and common meaning. Simmons First National Bank v. Abbott,288 Ark. 304, 705 S.W.2d 3 (1986). It is also a rule of statutory construction, however, that where the legislature has used a phrase of well-known legal signification, it is presumed to have used the language in that sense. Werbe v. Holt, 217 Ark. 198, 229 S.W.2d 225 (1950);Henderson v. Russell, 267 Ark. 140, 589 S.W.2d 565 (1979). Statutes will also be given a common sense construction. State v. Joshua, 307 Ark. 79,818 S.W.2d 249 (1991).
There appear to be at least two plausible ways to construe the language of the statute. Either the intention was to allow the Forestry Commission to adjust boundaries only between two or more actual "fire protection districts" in the legal sense; or to allow such action when two or more of any of the various types of fire protection areas, including nonprofits, are having a dispute concerning overlapping boundaries.[3]
There are problems with the acceptance of either of these alternatives.
To accept the first interpretation, although consistent with the plain language used, would not appear to address the instances which would most often cause the harm sought to be remedied by the legislature. To accept the second interpretation listed above, however, a court would have to all but ignore the plain language of the statute which refers expressly to "fire protection districts," a term of fixed legal signification.
Some explanation is necessary. The provision about which you inquire (A.C.A. § 14-284-125), authorizes the Forestry Commission to adjust the "boundaries" of such "fire protection districts." As noted above, the term "fire protection districts" is a term with a particularized legal meaning. The legislature has in the past been cognizant of the difference in the use of the words "fire protection districts" as opposed to "nonprofit" fire entities. See again, Acts 1991, No. 801, and Acts 1985, No. 160. This fact supports a conclusion that the legislature used the term "fire protection districts" deliberately, to distinguish them from other types of fire protection entities.
Such districts have well-defined "boundaries," which are set in the petition or ordinance creating them. Nonprofit corporate fire entities may or may not have well-defined legal "boundaries" depending upon their individual articles of incorporation or by-laws. They merely collect membership dues from persons within their area of operation. The quorum courts do not set the service area of such corporations. See Op. Att'y Gen. No. 96-114. These facts lead to the conclusion that the legislature intended to refer to "fire protection districts" with actual "boundaries," because that word is used in the act.
A construction that the act only applies to "fire protection districts" in the legal sense, however, would not appear to address a large part of the harm presumably sought to be remedied by the legislature. As noted above, "fire protection districts" have well-defined boundaries, set either in the petition creating them or by the relevant county ordinance. One would expect that with such well-defined legal boundaries, boundary disputes between "fire protection districts" would be a rare occurrence. The much more usual dispute would presumably arise as between two or more nonprofit fire entities, or as between, in this case, a nonprofit fire entity and a "fire protection district." This is where a "common sense" construction of the statute needs to be considered.
The second possible construction (a construction that the Act applies to nonprofit fire entities as well as "fire protection districts") is consistent with a common sense interpretation and the rule of construction which allows a court to look at the harm sought to be remedied by the legislature, but would require a court to ignore or look beyond the use of the legal term "fire protection districts." The act does refer at one point simply to "overlapping fire districts," which may indicate a loose usage of the term. See A.C.A. § 14-284-125. Another factor supporting the application of the Act to nonprofit fire entities is the fact that the Forestry Commission itself apparently deems the act applicable to such entities. It has been stated that agency interpretations of a statute, while not binding on courts, are highly persuasive, and should not be overturned unless clearly wrong. ArkansasState Medical Board v. Bolding, 324 Ark. 238, 920 S.W.2d 825 (1996). These facts support a conclusion that the act was also intended to apply to nonprofit fire entities. In fact, it is my understanding, although this fact might or might not be considered relevant evidence of legislative intent before a court, that Act 1178 was originally passed to address a boundary dispute involving three nonprofit fire entities. It is also my understanding that the Forestry Commission has in the past settled boundary disputes involving nonprofit fire entities. This fact is evidence of that agency's interpretation of the statute.
A court presented with the question would undertake a weighing of the competing factors listed above. In my estimation the question presented is a close one. Ordinarily, if a statute is unambiguous, a court will construe it just as it reads, and will not undertake an investigation of the legislative intent. In my opinion, however, some ambiguity is present with the use of the words "fire protection districts" and "overlapping fire districts." As such, an inquiry into the intention of the legislature is appropriate. Although there is sparse evidence of this intention from a reading of the provision, in my opinion the fact that the Forestry Commission itself interprets the statute as applying to nonprofits tips the scales in favor of an affirmative answer to your question. In my opinion, therefore, the answer to your question is "yes."
Act 1178 applies to boundary disputes between fire protection districts and nonprofit fire entities.
Any construction, however, which applies the statute to fire protection districts at all (which is plainly within the language of the statute) creates practical problems. First, the application of the provision to "fire protection districts" gives the State Forestry Commission the power to alter boundaries set either by county ordinance, or by petition and election of the people. This seems quite a sweeping grant of authority and it may be questioned whether this was the intention of the legislature. As noted supra at n. 3, however, the language of the provision indicates this intention.
Second, application of the statute to "fire protection districts" leads to problems in the collection of assessments. For example, when such a district is created, as noted above, its boundaries are set in the petition or relevant ordinance. Assessments, or a flat fee, are then levied against property within those boundaries. As your question suggests, in some instances these assessments may have already been levied against property before the time that the Forestry Commission opts to adjust boundaries. If the boundaries are adjusted to take the affected property out of the district, property owners may be left liable for payment of the assessments or fee, despite the fact that they are now, according to the Forestry Commission decision, within the boundary of a nonprofit fire protection entity, which will now look to the property owner for payment of dues. Similar problems could occur with a boundary dispute between two "fire protection districts." Property previously in one district, and liable for that district's particular assessment or fee could be moved into another district with a different assessment or fee. This problem inheres from the Forestry Commission's Act 1178 authority to change boundaries already firmly set through the use of other statutory procedures. This problem is not addressed in the relevant legislation. In my opinion, therefore, this legislative scheme, and in fact the entire body of law governing the various fire protection entities, their establishment, boundaries, and state and local regulating entities, could well benefit from legislative clarification and streamlining.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] A question regarding a referendum election on the ordinance establishing the district is discussed in Op. Att'y Gen. 98-154.
[2] Other districts are created by county ordinance after no objection is made during a statutory period. See A.C.A. § 14-284-203(1) and14-284-204 (Repl. 1998).
[3] A third possible construction is that the Act applies only to boundary disputes between nonprofit fire entities. This construction has some appeal, as it avoids the practical problems inherent in giving a state body (the Forestry Commission) the authority to change legal boundaries set by petition, and in some cases election, of the affected voters. I simply cannot accept this interpretation of the Act as plausible, however, where the express language denotes "fire protection districts." I cannot presume that the legislature intended to exclude "fire protection districts" from the ambit of the act, when those are the exact words used. Such an interpretation would require me to assume that the legislature was essentially careless in its use of language, a conclusion which I cannot lightly infer.